Michael Bleicher (SBN 313892)
michael.bleicher@zwillgen.com
ZWILLGEN PLLC
1900 M Street NW, Suite 250
Washington, DC 20036
Telephone: (202) 706-5251

*Attorney for Defendant*
*People Data Labs, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

JANELLE COCHRANE, individually and on behalf of all others similarly situated,

Plaintiff,

v.

PEOPLE DATA LABS, INC.,

Defendant.

Case No.: 25-cv-9533

Assigned to: Hon. Rita F. Lin

**DEFENDANT'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS**

Judge: Hon. Rita F. Lin
Hearing Date: January 20, 2026
Time: 10:00 a.m.
Courtroom: 15-18th Floor

Removed from San Francisco Superior Court Case No. CGC-25-629675

**TO THE COURT AND ALL PARTIES OF RECORD:**

**PLEASE TAKE NOTICE THAT** on January 20, 2026 at 10:00 a.m., or as soon thereafter as this matter may be heard, before the Honorable Rita F. Lin in Courtroom 15 of this Court, located on the 18th Floor of 450 Golden Gate Ave., San Francisco, CA 94102, Defendant People Data Labs, Inc. ("PDL") will and hereby does move this Court for an order granting its Motion to Dismiss with prejudice the Complaint ("Complaint" or "Compl.") filed by Plaintiff, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This Motion is based on this Notice of Motion; the supporting Memorandum of Points and Authorities; the Declaration of Michael Bleicher; the Request for Judicial Notice; the complete record in this action; and such matters and arguments as may come before the Court, including those raised in connection with reply briefing and oral argument relating to this Motion.

Dated: November 26, 2025 ZWILLGEN PLLC

By: */s/ Michael Bleicher*
Michael Bleicher (SBN 313892)
Michael.bleicher@zwillgen.com

*Attorney for Defendant*
*People Data Labs, Inc.*

# TABLE OF CONTENTS

INTRODUCTION ....... 1
BACKGROUND ....... 2
LEGAL STANDARD ....... 3
ARGUMENT ....... 4
I. Plaintiff lacks statutory standing to sue under Colorado law. ....... 4
II. Plaintiff is barred from seeking class relief for violations of the PTFA. ....... 5
III. The Listing Provision is unconstitutional. ....... 6
A. The Listing Provision is unconstitutionally vague. ....... 7
B. The Listing Provision violates the Dormant Commerce Clause ("DCC"). ....... 7
C. The Listing Provision violates the First Amendment on its face. ....... 8
1. Content-based speech restrictions are constitutionally suspect. ....... 9
2. The Listing Provision is a content-based restriction on protected speech. ....... 9
3. The Listing Provision does not target commercial speech. ....... 10
4. Section 304(4)(a)(I) fails strict scrutiny. ....... 11
i. The PTFA does not further a compelling government interest. ....... 11
ii. The Listing Provision is not narrowly tailored. ....... 12
iii. The PTFA does not use the least restrictive means available. ....... 13
IV. Plaintiff fails to state a claim under the Listing Provision. ....... 14
CONCLUSION ....... 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080 (9th Cir. 2007) ....................14

*Ashcroft v. ACLU*, 542 U.S. 656 (2004”) ....................13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................3, 4, 14

*Atlas Data Priv. Corp. v. We Inform, LLC*, 758 F. Supp. 3d 322 (D.N.J. 2024) ....................9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................3, 15

*Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60 (1983) ....................11

*Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786 (2011) ....................12

*Crowe v. Tull*, 126 P.3d 196 (Colo. 2006) ....................4

*Curran v. Home Partner Holdings LLC*, No. 23-cv-01279-DDD-MDB, 2024 WL 1829266 (D. Colo. Mar. 20, 2024) ....................15

*Dex Media W. Inc. v. City of Seattle*, 696 F.3d 952 (9th Cir. 2012) ....................10

*Examination Bd. of Pro. Home Inspectors v. Int'l Ass'n of Certified Home Inspectors*, 519 F. Supp. 3d 893 (D. Colo. 2021) ....................5

*FCC v. Fox Television Stations*, 567 U.S. 239 (2012) ....................7

*Foti v. City of Menlo Park*, 146 F.3d 629 (9th Cir. 1998) ....................7

*Friedman v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-CV-02432-WYD-KMT, 2015 WL 4036319 (D. Colo. July 1, 2015) ....................6

*Hall v. Walter*, 969 P.2d 224 (Colo. 1998) ....................5

*Hamilton v. Amazon.com Servs. LLC*, 2024 WL 158760 (10th Cir. Jan. 12, 2024) ....................15

*Harris v. Life Ins. Co. of N. Am.*, 419 F. Supp. 3d 1169 (N.D. Cal. 2019) ....................15

*Hilton v. Hallmark Cards*, 599 F.3d 894 (9th Cir. 2010) ....................11

*IMDb.com Inc. v. Becerra*, 962 F.3d 1111 (9th Cir. 2020) ....................9, 10

*Jackson v. Whitepages, Inc.*, 2025 WL 2407201 (N.D.W. Va. Aug. 19, 2025)....................10, 11

*Kolender v. Lawson*, 461 U.S. 352 (1983)....................7

*Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750 (1988)....................11

*Nat'l Pork Producers Council v. Ross*, 598 U.S. 356 (2023)....................8

*Nero v. Am. Fam. Mut. Ins. Co.*, No. 11-CV-02717-PAB-MJW, 2012 WL 4478958 (D. Colo. Sept. 28, 2012) ....................5

*Pearson v. Geico Cas. Co.*, No. 17-CV-02116-CMA-MEH, 2018 WL 2096348 (D. Colo. May 7, 2018)....................6

*Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970)....................8

*Przekurat by & through Przekurat v. Torres*, 2018 CO 69, 428 P.3d 512....................14

*Publius v. Boyer-Vine*, 237 F. Supp. 3d 997 (E.D. Cal. 2017)....................9

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015)....................9, 11, 12

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010)....................6

*Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011)....................9

*South Dakota v. Wayfair, Inc.*, 585 U.S. 162 (2018)....................8

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
No. C-13-1803 EMC, 2014 WL 1048710 (N.D. Cal. Mar. 14, 2014)......6

*TikTok Inc. v. Garland*,
604 U.S. 56 (2025)......9

*Tucker v. Whitepages, Inc.*,
Case No. 24-cv-03500, ECF No. 27 (D. Colo.)......2

*United States v. Alvarez*,
567 U.S. 709 (2012)......11, 13

*United States v. Playboy Ent. Grp., Inc.*,
529 U.S. 803 (2000)......9

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003)......4

*Walters v. Metro. Educ. Enters., Inc.*,
519 U.S. 202 (1997)......14

*Williams-Yulee v. Fla. Bar*,
575 U.S. 433 (2015)......12

**Statutes**

47 U.S.C. § 227 (Tel. Consumer Prot. Act)......13

Cal. Civ. Code § 1798.83.5......9

Colo. Rev. Stat. §§ 6-1-101 *et seq*. (Colo. Consumer Prot. Act)......1, 4, 5, 6

Colo Rev. Stat. § 6-1-113......4, 5, 6

Colo. Rev. Stat. § 6-1-301......2, 11

Colo. Rev. Stat. § 6-1-301 *et seq*. (PTFA)......1, 2, 5, 8

Colo. Rev. Stat. § 6-1-303......13

Colo. Rev. Stat. § 6-1-304...... *passim*

Colo. Rev. Stat. § 6-1-305......5

**Constitutional Provisions**

U.S. Const. amend. I......8, 9, 10, 11

U.S. Const. amend. V......7

**Rules**

Fed. R. Civ. P. 8 ........................................ 4

Fed. R. Civ. P. 23 ........................................ 6

**Other Authorities**

*Attorney / LLP Search & Disciplinary History*, Off. of Att'y Regul. Couns., https://www.coloradolegalregulation.com/attorney-search/ ........................................ 12

*Candidate Search*, Colo. Sec'y of State, https://tracer.sos.colorado.gov/PublicSite/SearchPages/CandidateSearch.aspx ........................................ 12

*Know*, American Heritage Dictionary, https://ahdictionary.com/word/search.html?q=know ........................................ 15

*Know*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/know ........................................ 15

*Public Voter Data and Information Requests FAQs*, Colo. Sec'y of State, https://www.sos.state.co.us/pubs/elections/FAQs/VoterRegistrationData.html ........................................ 12

U.S. Const. amend. I ........................................ 8, 9, 10, 11

U.S. Const. amend. V ........................................ 7

## INTRODUCTION

Plaintiff Janelle Cochrane attempts to unearth a vague and never-before-used Colorado law intended to combat fraudulent telemarketing practices to create a national prohibition on displaying cell phone numbers. Plaintiff's Complaint centers on claims that defendant People Data Labs, Inc. ("PDL"), a business-to-business ("B2B") data intelligence platform, violated Colorado's Prevention of Telemarketing Fraud Act, Colo. Rev. Stat. § 6-1-301 *et seq*. (the "PTFA") because her number theoretically *could* have been obtained from PDL. The Complaint fails to state a claim.

***First,*** Plaintiff lacks statutory standing under the PFTA to bring this action because she fails to allege an injury. The Complaint does not allege that Plaintiff has suffered any injury. Instead, the Complaint at best speculates that *if* certain harms happened to Plaintiff in the future and *if* the PTFA applied to PDL, PDL *could* be liable. Recitations of the elements of a cause of action and speculative "what if . . . " style pleading lacks the reasonable precision and particularity needed to establish standing under the PTFA and survive a motion to dismiss.

***Second***, the PTFA bars the relief Plaintiff demands. The PTFA is a subset of the Colorado Consumer Protection Act (the "CCPA"). The CCPA permits class action relief for actual damages but not for statutory damages. Plaintiff fails to plead any actual damages, and thus her claims for damages under the statute should be dismissed.

***Third***, the PTFA is unconstitutional. The PTFA is unconstitutionally vague, violates the Dormant Commerce Clause ("DCC"), and contravenes the First Amendment by regulating content-based speech without overcoming strict scrutiny.

***Fourth,*** even if the PTFA were constitutional, the Complaint fails to state a claim under the PTFA. The statute prohibits entities from "knowingly listing" a Colorado mobile number in a "directory" absent consent. But the Complaint fails to allege with any particularity that PDL *knew* Plaintiff's number was a Colorado mobile number assigned to a mobile phone she owned, rather than a mobile number assigned to a telephone owned by a non-Coloradan.

Even if Plaintiff could amend the Complaint to cure the conclusory allegations regarding her injuries no amendment can cure the PTFA's inapplicability to PDL's business or the statute's

constitutional defect. Plaintiff's claims should be dismissed with prejudice.

## BACKGROUND

This case is one of several Plaintiff has recently filed under the PTFA, which are just a subset of actions Plaintiff's counsel have filed in Massachusetts, New York, Washington, California, and Florida—but not Colorado, to whose citizens the PTFA's protections apply.[1] Before Plaintiff's counsel filed its first wave of actions in March of 2024, no party had *ever* brought an action under Colo. Rev. Stat. § 6-1-304(4)(I) ("the Listing Provision").

The Colorado legislature passed the PTFA in 1993 to protect consumers from "fraudulent and deceptive commercial telephone solicitation [that] has caused substantial financial losses to thousands of consumers." Colo. Rev. Stat. § 6-1-301. These cases involve a 20-year-old amendment to the PTFA that states:

> **(a)** On or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly:
>
> > **(I)** Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing[.]
> >
> > . . .
>
> **(b)** This subsection (4) shall not apply to a commercial telephone solicitation that is in relation to a preexisting commercial relationship between the person and the person who owns the cellular telephone.

Colo. Rev. Stat. § 6-1-304(4)(a)(I). No litigant had brought claims under the Listing Provision before Plaintiff's counsel. Nor had Colorado's Attorney General ever sought to enforce the Listing Provision. Despite the statute's clear purpose to regulate fraudulent and deceptive telemarketing (*see* Colo. Rev. Stat. § 6-1-301), Plaintiff does not allege that she received a single unwanted or deceptive call because of any action PDL took.

---

[1] Plaintiff's counsel first filed five PTFA cases filed in rapid succession in the U.S. District Court of Colorado in December 2024. But as the Colorado court became aware of the links between these cases and reassigned them to the same judge (the Hon. Daniel D. Domenico), Plaintiff's counsel abruptly dismissed them without prejudice on March 12 and March 14, 2025. *See, e.g.*, *Tucker v. Whitepages, Inc.*, Case No. 24-cv-03500, ECF No. 27 (D. Colo.). About a month later, those cases resurfaced and others, including this case, were filed by the same counsel everywhere but Colorado.

Founded in 2015, PDL is a data intelligence platform that assists individuals and companies by providing workforce data, company profiles, and job listings.[2] PDL's database is directed to business professionals in human resources, sales & marketing, and investment research, *not consumers*.[3] PDL provides a service that "facilitate[s] identifying and acquiring potential business-to-business leads" using "contact details, business categories, industry, size, location, and other relevant data." ECF No. 1-1 ("Compl.") ¶ 16.

Plaintiff resides in Brighton, Colorado. *See id.* ¶ 10. The Complaint provides scant detail about Ms. Cochrane or how PDL's alleged practices affected her. It alleges her "cellular telephone was listed by Defendant in its directory, available at peopledatalabs.com, to advertise and/or actually sell products and services." *Id*. Plaintiff claims "Defendant never requested—and Plaintiff never provided—affirmative consent, through written, oral, or electronic means to such listing." *Id*. Plaintiff does not allege that she ever requested PDL to delete her telephone number. But she makes no further factual allegations that are specific to her experience. Nonetheless, Plaintiff asserts a cause of action under the Listing Provision on behalf of herself and a putative class including "all Colorado residents whose cell phone numbers were listed on peopledatalabs.com." Compl. ¶¶ 31, 42-47. Plaintiff filed this case in San Francisco Superior Court on September 29, 2025. *See* ECF No. 1-1. PDL timely removed the case on November 5, 2025. *See* ECF No. 1.

**LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. Although a court generally must accept as true the allegations in a complaint, this rule is "inapplicable to legal conclusions," *id*., and "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S.

---

[2] https://www.peopledatalabs.com/blog/post/people-data-labs-series-b; https://www.peopledatalabs.com/person-data; https://www.peopledatalabs.com/company-data; https://www.peopledatalabs.com/job-posting-data

[3] https://www.peopledatalabs.com

544, 555 (2007). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not shown . . . that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)) (cleaned up). "A court may [] consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## ARGUMENT

### I. Plaintiff lacks statutory standing to sue under Colorado law.

Plaintiff fails to allege actual injury as required by the Colorado Consumer Protection Act (Colo. Rev. Stat. §§ 6-1-101 *et seq.*) (the "CCPA"), of which the PTFA is a subpart. The CCPA permits "any person who . . . [i]s an actual or potential consumer of defendant's goods, services, or property **and is injured** as a result of" a deceptive trade practice, to pursue a civil action for damages. Colo Rev. Stat. § 6-1-113(1)(a) (emphasis added). The Colorado Supreme Court has explained that plaintiffs must demonstrate an actual injury to have standing under the CCPA. Specifically, a plaintiff must establish, among other things, "that the plaintiff suffered injury in fact to a legally protected interest" and "that the challenged practice caused the plaintiff's injury." *Crowe v. Tull*, 126 P.3d 196, 201 (Colo. 2006) (collecting cases) (citations omitted).

Here, the Complaint merely recites the Listing Provision's statutory elements and speculates about types of harm that *could* affect someone whose number is available on the Internet. But Plaintiff does not allege that any of those hypotheticals have occurred. According to Plaintiff, she (and the class she seeks to represent) is entitled to damages because her mobile number *could* be searched on PDL's platform. If some party found it on "sites **like** Defendant's" (Compl. ¶ 28) (emphasis added), Plaintiff speculates, she might face "elevated risks of stalking, harassment, scams, identify theft, and unwanted telemarketing." *Id.* ¶ 46. Plaintiff's only other claimed injury is that PDL's alleged conduct "deprives [her] of the real, quantifiable value of such data," but she alleges no details regarding this claimed loss of value—or explains how exploiting such value would be consistent with her supposed interest in keeping her mobile number private. *Id.* ¶¶ 27, 46. The Complaint does not allege any injury Plaintiff actually "suffered," such as that PDL distributed

her number, anyone saw her number, or anyone contacted her (through telemarketing or otherwise) because of the alleged listing. This is insufficient. *See, e.g.*, *Nero v. Am. Fam. Mut. Ins. Co.*, No. 11-CV-02717-PAB-MJW, 2012 WL 4478958, at *3 (D. Colo. Sept. 28, 2012) (dismissing CCPA claim where plaintiff only "conclusorily allege[d]" injury within the CCPA's meaning).

The Complaint also fails to satisfy the CCPA's requirement that plaintiffs show that the conduct at issue has a negative "impact on the public as consumers of the defendant's 'goods, services, or property.'" *Hall v. Walter*, 969 P.2d 224, 234 (Colo. 1998) (citing Colo. Rev. Stat. § 6–1–105(a). Determining whether there is a "significant impact on the public" requires courts to consider "the number of consumers directly affected by the challenged practice" and "evidence that the challenged practice previously has impacted other consumers or has significant potential to do so in the future." *Examination Bd. of Pro. Home Inspectors v. Int'l Ass'n of Certified Home Inspectors*, 519 F. Supp. 3d 893, 919 (D. Colo. 2021), *aff'd sub nom. Am. Soc'y of Home Inspectors, Inc. v. Int'l Ass'n of Certified Home Inspectors*, 36 F.4th 1238 (10th Cir. 2022). Plaintiff pleads no facts indicating PDL's conduct has harmed any other member of the public, only speculation that harm *could* occur. *See* Compl. ¶¶ 46-47 (postulating that privacy harms or diminution of value might occur). Accordingly, her allegations do not satisfy the statutory standing requirements.

**II. Plaintiff is barred from seeking class relief for violations of the PTFA.**

Even if Plaintiff could establish standing under the PTFA (which she cannot), the PTFA bars the statutory damages she seeks on behalf of the class. *See* Compl. at 47. When the Colorado legislature adopted the Listing Provision, it also amended the PTFA (and by extension, the CCPA) to permit recovery of statutory damages for a violation of the Listing Provision on an *individual* basis. *See* Colo. Rev. Stat. § 6-1-305(1)(c) ("A person who engages in any unlawful telemarketing practice as defined in section 6-1-304(4) shall be liable in a private civil action . . ."). The provision does not provide for class relief. The CCPA also permitted statutory damages on an individual basis when the legislature passed Section 6-1-305(1) (c). *See* Colo. Rev. Stat. § 6-1-113(2)(a) ("Except in a class action . . . and notwithstanding any other law[,]" any person "in a private civil action" may

recover the greater of "actual damages").[4] The Colorado legislature amended the CCPA again in 2022 to authorize actual damages under the CCPA but did not authorize statutory damages for class relief. *See* Colo. Rev. Stat. § 6-1-113(2.9) ("In a case certified as a class action, a successful plaintiff may recover actual damages[.]"). The Colorado legislature's repeated decision not to amend the PTFA to provide for class action statutory damages evinces a clear legislative intent to cabin statutory damages to the $300-$500 available in individual actions.

This Court has repudiated attempts by plaintiffs to obtain class-wide statutory damages under the CCPA. *See Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, No. C-13-1803 EMC, 2014 WL 1048710, at *10 (N.D. Cal. Mar. 14, 2014) (dismissing claim for statutory damages in a class action because "the CCPA creates no statutory liability for a defendant in a private class action"). Courts in the Tenth Circuit have also found the CCPA does not permit actions for statutory damages on a class basis. *See, e.g., Pearson v. Geico Cas. Co*., No. 17-CV-02116-CMA-MEH, 2018 WL 2096348, at *9 (D. Colo. May 7, 2018) ("Two judges in this District and two courts in the Tenth Circuit interpreting the CCPA have found that the [CCPA] . . . 'creates no statutory liability for a defendant in a private class action.'"); *Friedman v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-CV-02432-WYD-KMT, 2015 WL 4036319, at *6 (D. Colo. July 1, 2015) ("[D]amages are barred in class actions under the CCPA."). Accordingly, these class-wide claims should be dismissed.

## III. The Listing Provision is unconstitutional.

Even if Plaintiff could seek statutory damages under the PTFA on a class basis, which she cannot, the Listing Provision is constitutionally infirm. It is impermissibly vague as to how entities

---

[4] Applying these restrictions in federal litigation is consistent with the Supreme Court's holding in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010). *Shady Grove* concerned a state law that barred *any* claim for statutory damages from being litigated as a class action, which the Supreme Court held conflicted with Federal Rule of Civil Procedure 23's general provision that a plaintiff may bring a class action regardless of what state law they are suing under. *See id.* at 399-400. Here, though, the CCPA does not purport to bar *any* class action for statutory damages. Instead, it limits one type of relief available to a potential class. Indeed, trying to extend *Shady Grove*'s holding to permit a putative class action for statutory damages in this context would impermissibly allow Congress to rewrite the individual state statutes' damages provisions, such that plaintiffs could circumvent a state legislature's express intent regarding what types of relief are available merely by suing in federal court.

must comply with the statute; it violates the DCC in its attempt to regulate the "listing" of any cell phone number that could be construed as a Colorado cell phone number; and it contravenes the First Amendment by failing strict scrutiny through its sweeping regulation of content-based speech.

**A. The Listing Provision is unconstitutionally vague.**

Due process requires "that a statute must clearly delineate the conduct it proscribes." *Foti v. City of Menlo Park*, 146 F.3d 629, 638 (9th Cir. 1998), *as amended on denial of reh'g* (July 29, 1998). "This requirement of clarity . . . is essential to the protections provided by the Due Process Clause of the Fifth Amendment." *FCC v. Fox Television Stations*, 567 U.S. at 253.

The PTFA does not specify how entities can determine whether a phone number is a Colorado mobile number subject to the statute. There are several methods by which entities could identify a number as "mobile" and tie it to a resident of a particular state. Each of those, though, could yield substantially different outcomes. Perhaps PDL must distinguish Colorado mobile numbers from non-Colorado mobile numbers by confirming if numbers contain Colorado area codes. But an area code is not always an accurate indication of one's state of residence because individuals often keep their phone number even when they no longer reside in the location assigned to the area code. This is likely to be even more true for cellular phones that, by definition, do not remain in a single location and can travel with consumers when they move out of Colorado. Or perhaps PDL must use location data as a proxy for determining whether a phone number is subject to the statute, if such location data even exists; however, even location data, if any, may not demonstrate whether an individual is a Colorado *resident* or just visiting. Entities like PDL therefore have no way to reasonably understand how to comply with the PTFA. *See, e.g.*, *Kolender v. Lawson*, 461 U.S. 352, 361 (1983) (holding a statute aimed at regulating loitering "unconstitutionally vague on its face because it encourages arbitrary enforcement by failing to describe with sufficient particularity what a[n] [entity] must do in order to satisfy the statute"). Accordingly, it is unconstitutionally vague.

**B. The Listing Provision violates the Dormant Commerce Clause ("DCC").**

Because complying with the Listing Provision *in* Colorado would impair commercial activity *outside* Colorado, the Provision also violates the DCC. Through the DCC, the Constitution

prohibits states from discriminating against or placing undue burdens on out-of-state commerce. *See South Dakota v. Wayfair, Inc.*, 585 U.S. 162, 173 (2018). The DCC bars state legislation that is "clearly excessive in relation to the putative local benefits" even "[w]here the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental[.]" *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). Although the Supreme Court has recently held that state laws that leave businesses with a clear choice between complying with that state's law nationwide or "withdraw[ing] from that State's market" do not violate the DCC, the Listing Provision doesn't give businesses such a choice. *Nat'l Pork Producers Council v. Ross* ("*Ross*"), 598 U.S. 356, 384-85 (2023).

The PTFA does not satisfy even *Ross'* lenient approach to determining a DCC violation, because it provides no way for businesses like PDL to withdraw from only Colorado's market. As discussed in Section IV(A), above, if the PTFA applies, PDL must comply by removing all Colorado mobile numbers from its offerings. But doing so is not as simple as it sounds. If PDL removed all phone numbers with Colorado area codes, it could not be sure that it had removed all numbers of Colorado residents with out-of-state area codes; at the same time, it could be removing numbers of people who used to, but no longer, live in Colorado but have kept a Colorado number. If it removed phone numbers based on undetermined location information, it would be relying on an unreliable proxy for actual *residence* in Colorado. If PDL takes the widest approach and removes numbers based on *any* possible connection to Colorado, it would remove many numbers with owners who do not actually live in Colorado. As a result, B2B commerce in the rest of the United States would be unduly burdened: there is no federal analogue to the PTFA, and most states don't have a similar statute either. Because there is no way to comply with or enforce the PTFA that doesn't impede nationwide B2B commerce, it violates the DCC.

**C. The Listing Provision violates the First Amendment on its face.**

The Listing Provision is also an unconstitutional content-based restriction against protected commercial speech that fails strict scrutiny under the First Amendment. It is neither narrowly tailored nor the least restrictive means of achieving Colorado's interests and therefore fails a facial

challenge. *See United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813 (2000).[5]

**1. Content-based speech restrictions are constitutionally suspect.**

"[A] law is content based on its face if it applies to particular speech because of the topic discussed or the idea or message expressed." *TikTok Inc. v. Garland*, 604 U.S. 56, 70 (2025) (internal citations omitted). Content-based restrictions are subject to strict scrutiny and are presumptively unconstitutional. *See Reed v. Town of Gilbert*, 576 U.S. 155, 164-65 (2015). Courts nationwide consistently hold that laws restricting disclosure of contact information like telephone numbers or addresses are content-based.[6]

**2. The Listing Provision is a content-based restriction on protected speech.**

The Listing Provision is content-based because it regulates speech based on whether it includes mobile phone information published "for a commercial purpose." Colo. Rev. Stat. § 6-1-304. This makes it a "paradigmatic example of content-based discrimination" because it "singles out specific subject matter for differential treatment, even if it does not target viewpoints within that subject matter." *Reed*, 576 U.S. at 169 (town sign regulations gave ideological messages "more favorable treatment than messages concerning a political candidate," although it did not give preference to one type of ideology or political candidate).

*IMDb* is instructive. There, in attempting to remedy age discrimination in the entertainment industry, the California legislature passed a statute requiring "commercial online entertainment employment service provider[s]" to remove the date of birth and age information of subscribers from the subscriber's paid profile or "any companion Internet Web sites under its control" upon subscriber request. *See IMDb.com*, 962 F.3d at 1117–18 (analyzing Cal. Civ. Code § 1798.83.5).

---

[5] PDL reserves the right to later bring an as-applied challenge under the First Amendment.

[6] *See, e.g.*, *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 564 (2011) (ruling that Vermont's law restricting disclosure of contact information is content based because it "disfavors marketing, that is, speech with a particular content"); *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1012–13 (E.D. Cal. 2017) (holding that statute allowing state officials to demand takedown of their home address or phone number was "content-based on its face"); *Atlas Data Priv. Corp. v. We Inform, LLC*, 758 F. Supp. 3d 322, 335 (D.N.J. 2024) (recognizing that prohibition of disclosure of home addresses and telephone numbers is content based restriction on speech); *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1120 (9th Cir. 2020 (holding that statute "[o]n its face... restricts speech because of its content" because "[i]t prohibits the dissemination of one type of speech: date of birth or age information") (cleaned up)

Applying strict scrutiny, Ninth Circuit held that while reducing age discrimination is a compelling government interest, the statute did not use the "least restrictive means to accomplish that goal and [was not] narrowly tailored" because it "restrict[ed] only websites like [IMDb.com] while leaving unrestricted every other avenue through which age information might be disseminated." *Id.* at 1126. Similarly, the Listing Provision allows any entity to publish mobile numbers for a supposedly "non-commercial" purpose and also places no restrictions on publishing other types of personal contact information, such as street address or email address, for a commercial purpose.

**3. The Listing Provision does not target commercial speech.**

Further, while the Listing Provision addresses "listings" made "for a commercial purpose," the lower standard of intermediate scrutiny that applies to laws targeting commercial speech does not apply here. Whether speech is "commercial" depends on its content, not its purpose. Courts in the Ninth Circuit look to "three characteristics which, in combination, support a conclusion that the document at issue constitute[s] commercial speech, including (i) their advertising format, (ii) their reference to a specific product, and (iii) the underlying economic motive of the speaker." *Dex Media W. Inc. v. City of Seattle*, 696 F.3d 952, 958 (9th Cir. 2012) (cleaned up).

Courts evaluating similar laws regulating publication of personal information held that those laws did *not* regulate commercial speech. For example, in *Jackson v. Whitepages, Inc.*, the court considered a law that prohibited "disclosing, redisclosing or otherwise making available the home address or unpublished home or personal telephone number" of certain public officials. No. 24-cv-102, 2025 WL 2407201, at *1 (N.D.W. Va Aug. 19, 2025) (cleaned up), *appeal filed sub nom. Michael Jackson v. Whitepages, Inc.*, No. 25-2122 (4th Cir. Sept. 19, 2025). It rejected the plaintiff's arguments that disclosure of addresses and phone numbers on "people search" websites are commercial speech because they are "driven by an economic motivation," or are comparable to advertisements because companies "will post the home addresses and phone numbers of persons to draw customers to their sites, who in turn will then see advertisements for other goods and services." *Id*. at *10. Further, as the Complaint explains, PDL "provides an online business-to-business" service—i.e., it offers contact information about *businesses*—so the First Amendment interest is greater because such information is of greater public concern than the purely personal

information at issue in cases like *Jackson*. Compl. ¶ 16; *see Jackson*, 2025 WL 2407201, at *4 (law prohibiting "people search" or "people finder" websites from disclosing individuals' personal contact information was unconstitutional).

Further, to the extent a listing in a business intelligence search platform is a "product," the listing does not "refer" to a product; it *is* the product. *See, e.g., Hilton v. Hallmark Cards*, 599 F.3d 894, 905 n.7 (9th Cir. 2010) (a greeting card is not commercial speech because it "is not advertising the product; it *is* the product") (emphasis in original). The contact information is not "commercial" just because it is offered for a price. Likewise, the Listing Provision's reference to a "commercial purpose" does not make the underlying publication "commercial." Economic motivation alone is "clearly . . . insufficient" to transform fully protected speech into commercial speech. *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 67 (1983). "[T]he degree of First Amendment protection is not diminished merely because the [protected expression] is sold rather than given away." *Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 756 n.5 (1988). The Listing Provision is no different because the communication that the statute regulates is factual, not commercial; PDL's business model does not change this.

**4. Section 304(4)(a)(I) fails strict scrutiny.**

As a content-based restriction targeting noncommercial speech, the Listing Provision is "presumptively unconstitutional," and it cannot overcome that high bar because it is underinclusive and a heavy-handed solution where less restrictive means are available. *Reed*, 576 U.S. at 163.

**i. The PTFA does not further a compelling government interest.**

The PTFA's preamble cites two interests: protecting "the integrity of the telemarketing industry" and preventing "fraudulent and deceptive commercial telephone solicitation." Colo. Rev. Stat. § 6-1-301. But nothing in the Complaint or in caselaw establishes that these are "compelling government interests" legitimizing a content-based restriction. *Reed*, 576 U.S. at 171. Courts have never recognized the "integrity of the telemarketing industry" as a compelling interest, and it should be given minimal, if any, weight here. Preventing fraudulent and deceptive telemarketing may be Colorado's purported interest, but "recit[ing] the Government's compelling interests" is not enough. *United States v. Alvarez*, 567 U.S. 709, 725-26 (2012) (government must still carry its "heavy

burden when it seeks to regulate protected speech" even if the interest is compelling). Yet the statute does not provide any more substantive justification for how it targets protected speech. Even if that interest has some merit, which PDL does not concede, the PTFA still fails scrutiny because it is not narrowly tailored and is more restrictive than necessary.

**ii. The Listing Provision is not narrowly tailored.**

Next, the Listing Provision is not narrowly tailored because it prohibits only some ways of publicizing mobile phone numbers, even though it purports to address the harm from publicizing mobile phone numbers in general. A law is not narrowly tailored if it is "seriously underinclusive" or "overinclusive." *See Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 805 (2011). A law is underinclusive if it places "strict limits" on some activities, when others "create the same problem." *Reed*, 576 U.S. at 172. If a law is "underinclusive," this may show that it "does not actually advance a compelling interest." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 449 (2015). Indeed, if a law regulates one category of speech, but allows others to go untouched, this alone can render it unconstitutional. *See Reed*, 576 U.S. at 172; *Ent. Merchs. Ass'n*, 564 U.S. at 802.

The Listing Provision is critically underinclusive because it targets one channel of speech but allows personal telephone numbers to be published in several other ways. The state government makes **any voter's phone number publicly accessible** upon request (*including* cell phone numbers) unless marked confidential.[7] Colorado disclosure reports contain political candidates' phone numbers.[8] Colorado also previously maintained an employee directory which included state employees' phone numbers.[9] And the Colorado Supreme Court maintains a directory of all attorneys barred within the state, including their phone numbers.[10]

[7] *Public Voter Data and Information Requests FAQs*, Colo. Sec'y of State, https://www.sos.state.co.us/pubs/elections/FAQs/VoterRegistrationData.html (last accessed Nov. 17, 2025).
[8] *See Candidate Search*, Colo. Sec'y of State, https://tracer.sos.colorado.gov/PublicSite/SearchPages/CandidateSearch.aspx (last accessed Nov. 17, 2025).
[9] *See* Declaration of Michael Bleicher in Support of PDL's Request for Judicial Notice, Ex. A.
[10] *Attorney / LLP Search & Disciplinary History*, Off. of Att'y Regul. Couns., https://www.coloradolegalregulation.com/attorney-search/ (last accessed Nov. 17, 2025).

Rather than limit disclosure of business or personal phone numbers in general, the Listing Provision applies only to speakers with a nebulously-defined "commercial purpose," however that might be interpreted. And along with governmental entities, the "commercial purpose" limitation (Colo. Rev. Stat. § 6-1-304(4)(a)(I)) would seemingly exclude religious, political, educational organizations, and others who might share phone numbers for various purposes—even if raising or making money is *part* of the reason for sharing them. The law also exempts businesses that do not "list"—whatever that means—cell phone numbers in "directories," even if their publication of those numbers has a commercial purpose. And, oddly, the law also allows listing numbers if there is an amorphous "pre-existing business relationship" between the parties. *Id.*, subs. (4)(b).

**iii. The PTFA does not use the least restrictive means available.**

Finally, the PTFA does not pass muster because less restrictive alternatives could protect Coloradoans from fraud or harassment stemming from their cell phone numbers' availability. When legislation restricts substantial amounts of speech, strict scrutiny requires that it do so by the least restrictive means among all effective alternatives. *Ashcroft v. ACLU* ("*Ashcroft II*"), 542 U.S. 656, 666 (2004"). The state must bear the burden of proving that "proposed less restrictive alternatives are less effective." *Ashcroft II*, 542 U.S. at 666. This burden cannot be met with surface-level assertions. *See, e.g., Alvarez*, 567 U.S. at 729.

Here, several less restrictive alternatives exist. Statutes such as the federal Telephone Consumer Protection Act, 47 U.S.C. § 227, and various state-level telemarketing laws offer additional avenues to address these concerns without impinging upon protected speech. Indeed, the PTFA's own provisions provide additional examples of less restrictive means of protecting consumers from fraud or harassment: registration of commercial telephone sellers (Colo. Rev. Stat. § 6-1-303), the ability to cancel or refund purchases (Colo. Rev. Stat. § 6-1-304(1)(b)–(c)), and prohibitions on misrepresentations during telephone calls (Colo. Rev. Stat. § 6-1-304(1)(e)–(h)). In light of these regulations aimed at curbing telemarketing fraud and deception, Section 304(4)(a)(I)'s outright ban on listing cell phone numbers in a directory for commercial purposes does not represent the least restrictive means of advancing the stated governmental interest.

Also, there are ways to accomplish the PTFA's intended purpose without similarly impeding protected speech. For example, cell phone numbers that the government or owners previously disclosed publicly could be excluded from coverage. Colorado could enact stricter penalties on acts of fraud or harassment relating to use of a mobile phone number (possibly expanding liability to include the person or entity who supplied the phone number). Lesser penalties, such as injunctive relief rather than money damages, could address the harms the PTFA seeks to combat while reducing the chilling effect on lawful speech. Given its constitutionally suspect goals, limited applicability to only certain speakers, and the availability of less restrictive alternatives, the Listing Provision cannot survive strict scrutiny.

**IV. Plaintiff fails to state a claim under the Listing Provision.**

Even if this Court finds the PTFA is constitutional—and it is not—Plaintiff has not pleaded a violation of the PTFA's Listing Provision. The Listing Provision requires Plaintiff to allege that PDL (1) "knowingly" (2) "lists" (3) a Colorado cellular telephone number, (4) assigned to a telephone she owns, (5) "in a directory," (6) "for a commercial purpose," (7) without "affirmative consent[] through written, oral, or electronic means," and (8) there is no "preexisting commercial relationship" between PDL and Plaintiff. *See* Colo. Rev. Stat. § 6-1-304(4).

The Complaint recites the statutory language (in part) but offers no detail to substantiate it. *See Iqbal*, 556 U.S. at 678. First, Plaintiff pleads no facts showing that PDL "knowingly lists" her Colorado mobile number. The PTFA does not define "knowingly," nor has a court interpreted the meaning of that term under the statute; so, the term's plain meaning applies. *See Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 207 (1997) ("[I]n the absence of an indication to the contrary, words in a statute are assumed to bear their ordinary, contemporary, common meaning.") (cleaned up). In determining the plain meaning of language, courts "consult dictionary definitions." *Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080, 1088 (9th Cir. 2007).

The plain meaning of "knowingly" doesn't support Plaintiff's attempt to extend the PTFA to her claims against PDL, however. Colorado courts "[a]ffording 'knowingly' its 'plain and ordinary meaning'" generally interpret it to require actual knowledge. *Przekurat by & through Przekurat v. Torres*, 2018 CO 69, ¶ 15, 428 P.3d 512, 516 (collecting cases) (citations omitted) (noting that in

contrast, "[w]hen the General Assembly imposes a constructive knowledge requirement, it typically provides that a person 'should have known' of a particular thing"). Dictionaries define "know" as "to be aware of the truth or factuality of"[11] and "[t]o regard as true beyond doubt."[12] But Plaintiff fails to allege any facts indicating that PDL had any awareness her number was a *Colorado mobile number*, rather than an out-of-state mobile number or a number belonging to a resident of a state besides Colorado. Instead, she merely recites elements of the Listing Provision. *See* Compl. ¶¶ 22, 42. And if this Court finds that "knowingly" (or any other part of the statute) is ambiguous, it should certify the question to the Colorado Supreme Court rather than decide a "novel question of Colorado law." *Hamilton v. Amazon.com Servs. LLC*, 2024 WL 158760, at *1 (10th Cir. Jan. 12, 2024), *certified question answered*, 2024 CO 60, 555 P.3d 620 (certifying "novel question [of Colorado law] . . . to the Colorado Supreme Court"); *Curran v. Home Partner Holdings LLC*, No. 23-cv-01279-DDD-MDB, 2024 WL 1829266, at *1 (D. Colo. Mar. 20, 2024) (same).

Similarly, Plaintiff offers no facts to support her assertion that "Defendant never requested—and Plaintiff never provided—affirmative consent, through written, oral, or electronic means to such listing." Compl. ¶ 10.[13] Plaintiff may not rely on these "formulaic recitation[s] of the elements of a cause of action" without *any* specific factual pleading in support. *Twombly*, 550 U.S. at 555; *Harris v. Life Ins. Co. of N. Am.*, 419 F. Supp. 3d 1169, 1172 (N.D. Cal. 2019). Because these conclusory statements fall short of the pleading standard, the Complaint should be dismissed notwithstanding its other defects.

**CONCLUSION**

For the foregoing reasons, this Court should dismiss Plaintiff's Complaint with prejudice.

---

[11] *Know*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/know (last accessed Nov. 5, 2025).

[12] *Know*, American Heritage Dictionary, https://ahdictionary.com/word/search.html?q=know (last accessed Nov. 5, 2025).

[13] Indeed, Plaintiff's claims are undercut by her own public posting of a phone number, under her name, on Facebook in January 2023 (nearly two years prior to filing this action) under her name in a post soliciting the public to shop at a location where she was a vendor. *See* https://www.facebook.com/photo/?fbid=10219131706517134&set=pcb.10219131710317229 (last visited Nov. 5, 2025). The Court can take judicial notice that this page and its contents exist, as discussed in PDL's concurrently-submitted Request for Judicial Notice. *See* RJN at B.

Dated: November 26, 2025

Respectfully submitted,

ZWILLGEN PLLC

By: */s/ Michael Bleicher*

Michael Bleicher (SBN 313892)
Michael.bleicher@zwillgen.com

*Attorney for Defendant*
*People Data Labs, Inc.*