**BURSOR & FISHER, P.A.**
Daniel S. Guerra (State Bar No. 267559)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: dguerera@bursor.com

**BURSOR & FISHER, P.A.**
Matthew A. Girardi (*Pro Hac Vice*)
50 Main St., Ste. 475
White Plains, NY 10506
Telephone: (914) 874-0708
Facsimile: (914) 206-3656
Email: mgirardi@bursor.com

*Attorneys for Plaintiff*

[*Additional counsel on signature page*]

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

JANELLE COCHRANE, individually and on behalf of all others similarly situated,

Plaintiff,

v.

PEOPLE DATA LABS, INC.,

Defendant.

Case No. 3:25-cv-09533-RFL

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Date: January 20, 2026
Time: 10:00 a.m.
Courtroom: 15-18th Floor
Judge: Hon. Rita F. Lin

## TABLE OF CONTENTS

PAGE(S)


INTRODUCTION .......... 1
ARGUMENT .......... 1
I. PLAINTIFF HAS STATUTORY STANDING .......... 1
II. PLAINTIFF CAN RECOVER CLASS-WIDE STATUTORY DAMAGES .......... 3
III. DEFENDANT'S CONSTITUTIONAL CHALLENGES FAIL .......... 4
A. The Listing Provision Is Not Unconstitutionally Vague .......... 4
B. The Listing Provision Does Not Violate The Dormant Commerce Clause .......... 5
C. The Challenged Conduct Is Not "Speech" .......... 6
D. The CLP Is Not Content-Based .......... 7
E. Statutes Recognizing Privacy Torts Are Not Subject To Strict Scrutiny .......... 8
F. The CLP Regulates Commercial Speech .......... 9
G. Assuming *Arguendo* Strict Scrutiny Applies, The CLP Survives .......... 12
IV. PLAINTIFFF STATES A CLAIM UNDER THE CLP .......... 15
CONCLUSION .......... 15

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Ainscough v. Owens*,
90 P.3d 851 (Colo. 2004) ........ 1, 2

*Am. Comp. Ins. Co. v. McBride*,
107 P.3d 973 (Colo. App. 2004) ........ 2

*Atlas Data Privacy Corp. v. We Inform, LLC*,
758 F. Supp. 3d 322 (D.N.J. 2024) ........ 8, 9, 13

*Ariix, LLC v. NutriSearch Corporation*,
985 F.3d 1107 (9th Cir. 2021) ........ 10

*Boelter v. Advance Mag. Publishers Inc.*,
210 F. Supp. 3d 579 (S.D.N.Y. 2016) ........ 11

*Boelter v. Hearst Commc'ns, Inc.*,
192 F. Supp. 3d 427 (S.D.N.Y. 2016) ........ 10, 11, 13, 15

*Boelter v. Hearst Commc'ns, Inc.*,
269 F. Supp. 3d 172 (S.D.N.Y. 2017) ........ 13

*Bonanno v. The Quizno's Franchise Co. LLC*,
2008 WL 638367 (D. Colo. Mar. 5, 2008) ........ 3

*Brayshaw v. City of Tallahassee*,
709 F. Supp. 2d 1244 (N.D. Fla. 2010) ........ 8

*Brooks v. Thomson Reuters Corp.*,
2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) ........ 11, 12

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ........ 2

*Burson v. Freeman*,
504 U.S. 191 (1992) ........ 9

*Camacho v. Control Grp. Media Co., LLC*,
2022 WL 3093306 (S.D. Cal. July 18, 2022) ........ 2

*Carey v. Brown*,
447 U.S. 455 (1980) ........ 12

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
447 U.S. 557 (1980) ........ 10, 11, 12

*Citizens for Free Speech, LLC v. Cnty. of Alameda*,
114 F. Supp. 3d 952 (N.D. Cal. 2015) ... 2

*City of Austin v. Reagan Nat'l Advertising of Austin, LLC*
596 U.S. 61 (2022) ... 7, 8

*Clark v. Community for Creative Non-Violence*,
468 U.S. 288 (1984) ... 6

*Cunha v. IntelliCheck, LLC*,
254 F. Supp. 3d 1124 (N.D. Cal. 2017) ... 5

*Dex Media West, Inc. v. City of Seattle*,
696 F.3d 952 (9th Cir. 2012) ... 7

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
472 U.S. 749 (1985) ... 11, 12

*Ferguson v. Friendfinders, Inc.*,
94 Cal. App. 4th 1255 (1st Dist. 2002) ... 6

*Fla. Star v. B.J.F.*,
491 U.S. 524 (1989) ... 9

*Friedman v. Dollar Thrifty Auto. Grp., Inc.*,
2013 WL 5448078 (D. Colo. Sept. 27, 2013) ... 3

*Gallion v. Charter Commc'ns Inc.*,
287 F. Supp. 3d 920 (C.D. Cal. 2018) ... 13

*Golec v. Boring*,
2024 WL 5102044 (Colo. App. Dec. 12, 2024) ... 9

*Hall v. Walter*,
969 P.2d 224 (Colo. 1998) ... 1, 2

*Hilton v. Hallmark Cards*,
599 F.3d 894 (9th Cir. 2010) ... 10

*Holder v. Humanitarian L. Project*,
561 U.S. 1 (2010) ... 4

*Hoye v. City of Oakland*,
653 F.3d 835 (9th Cir. 2011) ... 4

*IMDb.com Inc. v. Becerra*,
962 F.3d 1111 (9th Cir. 2020) ... 7, 8

*In re Facebook Biometric Info. Priv. Litig.*,
2018 WL 2197546 (N.D. Cal) ... 6

*Ivar v. Elk River Partners, LLC*,
705 F. Supp. 2d 1220 (D. Colo. 2010) .................................................... 2

*Jackson v. Whitepages*,
2025 WL 2407201 (N.D.W. Va. Aug. 19, 2025) .................................................... 9, 10

*Joe Dickerson & Assocs., LLC v. Dittmar*,
34 P.3d 995 (Colo. 2001) .................................................... 9

*Kellman v. Spokeo, Inc.*,
599 F. Supp. 3d 877 (N.D. Cal. 2022).................................................... 2, 6, 9, 13

*Kolebuck-Utz v. Whitepages Inc.*,
2021 WL 1575219 (W.D. Wash. Apr. 22, 2021) .................................................... 10, 12, 13

*Lukis v. Whitepages, Inc.*,
542 F. Supp. 3d 831.................................................... 7

*MaryCLE, LLC v. First Choice Internet, Inc.*,
890 A.2d 818 (Md. Ct. Spec. App. 2006).................................................... 5

*Meinecke v. City of Seattle*,
99 F.4th 514 (9th Cir. 2024).................................................... 12

*Monroy v. Shutterfly, Inc.*,
2017 WL 4099846 (N.D Ill. Sept. 15, 2017).................................................... 6

*Nelson v. United States*,
915 F.3d 1243 (10th Cir. 2019).................................................... 15

*Nixon v. Administrator of Gen. Servs.*,
433 U.S. 425 (1977) .................................................... 9

*One Creative Place, LLC v. Jet Ctr. Partners, LLC*,
259 P.3d 1287 (Colo. App. 2011).................................................... 3

*Otter Prods., LLC v. Triplenet Pricing Inc.*,
572 F. Supp. 3d 1066 (D. Colo. 2021) .................................................... 2

*People v. Martinez*,
534 P.3d 72 (2023) .................................................... 11

*Project Veritas v. Schmidt*,
125 F.4th 929 (9th Cir. 2025).................................................... 7

*Publius v. Boyer-Vine*,
237 F. Supp. 3d 997 (E.D. Cal. 2017) .................................................... 8

*Reed v. Town of Gilbert, Ariz.*,
576 U.S. 155 (2015) .................................................... 7, 8

*Rivera v. Google Inc.*,
238 F. Supp. 3d 1088 (N.D. Ill. 2017) ..... 5

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*,
547 US. 47 (2006) ..... 6

*Saunders v. Hearst Television, Inc.*,
711 F. Supp. 3d 24 (D. Mass. 2024) ..... 11, 12, 13

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) ..... 4

*Sheehan v. Gregoire*,
272 F. Supp. 2d 1135 (W.D. Wash. 2003) ..... 8

*Shekarchian v. Maxx Auto Recovery, Inc.*,
487 P.3d 1026 (Colo. App. 2019) ..... 3

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011) ..... 7

*Texas v. Johnson*,
491 U.S. 397 (1989) ..... 6

*Tonnessen v. Denver Pub. Co.*,
5 P.3d 959 (Colo. App. 2000) ..... 8

*Troster v. Pennsylvania State Dept. of Corrections*,
65 F.3d 1086 (3d. Cir. 1995) ..... 6

*United States v. Rahimi*,
602 U.S. 680 (2024) ..... 4

*Victory Processing, LLC v. Fox.*,
937 F.3d 1218 (9th Cir. 2019) ..... 12, 13

*Vidal v. Elster*,
602 U.S. 286 (2024) ..... 8

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
455 U.S. 489 (1982) ..... 4

*Williams-Yulee v. Fla. Bar*,
575 U.S. 433 (2015) ..... 13

*Wimberly v. Ettenberg*,
570 P.2d 535 (1977) ..... 1

**STATUTES**

18 U.S.C. § 2710 .......... 13

47 U.S.C. § 227 .......... 13

Colo. Rev. Stat. ("CRS") § 6-1-304(4)(a)(I) .......... 1, 10, 13, 15

CRS § 6-1-301 .......... 1, 13

CRS § 6-1-305 .......... 3

CRS § 6-1-113 .......... 3

CRS § 6-1-305(1)(c) .......... 1, 4

CRS § 6-1-113(2.9) .......... 3

CRS §§ 6-1-304(1)-(3) .......... 14

**RULES**

Fed. R. Civ. P. 23 .......... 4

## INTRODUCTION

Colo. Rev. Stat. ("CRS") § 6-1-304(4)(a)(I) (the "Commercial Listing Provision" or "CLP", of the Prevention of Telemarketing Fraud Act ("PTFA")), was enacted to address privacy concerns and protect cell phone users from the misappropriation of their personal information. This aligns with the PTFA's legislative purpose. *See* CRS § 6-1-301 (legislative declaration). The CLP provides:

> (a) [A] person commits an unlawful telemarketing practice if the person knowingly:
>
> (I) Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing[.]

Defendant People Data Labs, Inc. ("PDL" or "Defendant") has violated this abundantly clear proscription by listing the cell phone numbers of thousands of Colorado residents, including Plaintiff Janelle Cochrane ("Plaintiff"), in its for-sale and for-profit directory, without receiving affirmative consent to such listing. *See* Complaint (ECF No. 1-1) ("Compl.") ¶¶ 6, 10. And PDL's listing of cell phone numbers is done for a commercial purpose: PDL is literally selling Plaintiff's and Class Members' cell phone numbers and accompanying information to its customers and subscribers. *Id.* ¶ 23. Plaintiff thus brings this action under CRS § 6-1-305(1)(c). *Id.* ¶ 9.

Defendant has moved to dismiss. ECF No. 12 ("MTD"). For the below reasons, Defendant's motion lacks merit and should be denied in its entirety.

## ARGUMENT

### I. PLAINTIFF HAS STATUTORY STANDING

PDL argues that "Plaintiff fails to allege actual injury as required by the Colorado Consumer Protection Act[.]" MTD at 4. This is wrong. "[F]or a private cause of action under the CCPA, the plaintiff must meet the *Wimberly* standing requirements by demonstrating (a) injury in fact; (b) to a legally protected interest." *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998) (citing *Wimberly v. Ettenberg*, 570 P.2d 535 (1977)). Here, Plaintiff states a claim under the PTFA, *see infra* § IV., so the second prong is satisfied. *See, e.g.*, *Ainscough v. Owens*, 90 P.3d 851, 856 (Colo. 2004) (second prong asks "whether the plaintiff has a claim for relief under … a statute"). Thus, Plaintiff focuses on the first prong. "The *Wimberly* test provides a relatively broad definition of standing that has

traditionally been relatively easy to satisfy." *Ivar v. Elk River Partners, LLC*, 705 F. Supp. 2d 1220, 1241 (D. Colo. 2010) (cleaned up). An "[i]njury in fact may be proved by showing that the action complained of has caused or has threatened to cause injury." *Am. Comp. Ins. Co. v. McBride*, 107 P.3d 973, 976 (Colo. App. 2004) (citation omitted). Critically, "**[d]eprivations of many legally created rights, although themselves intangible, are nevertheless injuries-in-fact.**" *Ainscough*, 90 P.3d at 856 (emphasis added). Here, Plaintiff suffered the deprivation of her rights under the PTFA when her cell phone number was listed by PDL in its directory, for a commercial purpose, without her consent. Compl. ¶ 10. Thus, Plaintiff suffered an injury in fact: she was deprived of her legal right to control who lists her cellular telephone number in a directory for commercial purposes. *Id.*

Even under Article III, Plaintiff suffered injury. "[D]isclosure of private information is a type of intangible harm traditionally recognized to be appropriate for judicial resolution." *Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 889 (N.D. Cal. 2022) (cleaned up). A "violation of a statute that protects a substantive right to privacy does result in a concrete harm." *Brown v. Google LLC*, 685 F. Supp. 3d 909, 924 (N.D. Cal. 2023) (cleaned up). PDL contends Plaintiff's "other claimed injury is that PDL's alleged conduct deprives [her] of the real, quantifiable value of such data, but she alleges no details regarding this claimed loss of value[.]" MTD at 4 (cleaned up). But, "if a defendant uses a plaintiff's name and/or likeness to advertise, then it can reasonably be inferred that the name and/or likeness has some economic value, even if small. … [This can] establish[] common law injury[.]" *Camacho v. Control Grp. Media Co., LLC*, 2022 WL 3093306, at *28 (S.D. Cal. July 18, 2022) (cleaned up); *see also Kellman*, 599 F. Supp. 3d at 890 ("simp[le] loss of commercial use" is injury).

PDL argues "[t]he Complaint also fails to satisfy the CCPA's requirement … [of] negative impact on the public[.]" MTD at 5 (cleaned up). Again, PDL misses the mark.[1] "When analyzing whether a trade practice has a significant public impact, courts consider (1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *Otter*

[1] Defendant does not raise, and therefore waives, any argument as to the other three elements of the standing inquiry set out by *Hall*, 969 P.2d at 235. *See, e.g.*, *Citizens for Free Speech, LLC v. Cnty. of Alameda*, 114 F. Supp. 3d 952, 973 (N.D. Cal. 2015) (Newly-raised reply arguments waived).

*Prods., LLC v. Triplenet Pricing Inc.*, 572 F. Supp. 3d 1066, 1078 (D. Colo. 2021) (cleaned up). The "analysis [is] more akin to a balancing test than a checklist." *One Creative Place, LLC v. Jet Ctr. Partners, LLC*, 259 P.3d 1287, 1290 (Colo. App. 2011). Plaintiff meets this standard.

*First*, the proposed class includes "thousands of individuals," consisting of "all Colorado residents whose cell phone numbers were listed on [PDL]." Compl. ¶¶ 6, 11, 31, 33. And as a "data broker," Defendant "compiles … data" in bulk. *Id.* ¶¶ 15-16, *see also id.* ¶ 18-25. Thus, there is sufficient numerosity. *See Friedman v. Dollar Thrifty Auto. Grp., Inc.*, 2013 WL 5448078, at *5 (D. Colo. Sept. 27, 2013) (first factor "adequately alleged" when "FAC alleges that many consumers … were affected"). *Second*, "Defendant never requests nor receives Coloradans' affirmative consent[,] … [r]ather, Defendant lists the cell phone numbers of Coloradans it has never engaged with, has had no connection to, and who are unaware of its existence." *E.g.* Compl. ¶ 45. Class Members had no bargaining power whatsoever. Thus, the second factor favors Plaintiff. *See Bonanno v. The Quizno's Franchise Co. LLC*, 2008 WL 638367, at *5 (D. Colo. Mar. 5, 2008) (second factor satisfied where Plaintiffs "had no opportunity to negotiate the terms"). *Third,* Defendant violated Class Members' PTFA rights, privacy, and economic interests through its directory. *See supra*. This actively exposes Class Members to elevated risks of stalking, harassment, scams, identity theft, and unwanted telemarketing. *See* Compl. ¶¶ 8, 24-30, 46. Therefore, the third factor is satisfied. *See Bonanno*, 2008 WL 638367, at *5 (factor satisfied where "Plaintiffs clearly allege that the challenged conduct has impacted and will continue to impact large numbers of consumers").

## II. PLAINTIFF CAN RECOVER CLASS-WIDE STATUTORY DAMAGES

PDL next argues that the PTFA bars class-wide statutory damages. MTD at 5. PDL is wrong. First, the "penalties" section of the PTFA expressly guarantees the remedies therein "**[i]n addition** to the remedies available under sections 6-1-110, 6-1-112, and 6-1-113." CRS § 6-1-305 (emphasis added). Thus, even if the putative class could not recover statutory damages under CRS § 6-1-113, they can still recover them under CRS § 6-1-305, which contains no such prohibitionary language. Second, CRS § 6-1-113(2.9) sets a floor for what "a successful plaintiff may recover," not a ceiling limiting all potential remedies. *See Shekarchian v. Maxx Auto Recovery, Inc.*, 487 P.3d 1026, 1031 n.2 (Colo. App. 2019) ("The CCPA does not supplant or preempt other causes of action or remedies

available to a plaintiff under the common law or other statutes."). Here, the statutory damages guaranteed by the PTFA are non-discretionary. *See* CRS § 6-1-305 (1)(c). Third, even if the CCPA could somehow be read to bar Plaintiff's ability to recover statutory damages under the PTFA, such an application would run afoul of *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 409 (2010). Plaintiff is allowed to aggregate statutory damages under Fed. R. Civ. P. 23. Preventing Plaintiff from doing so would directly conflict with Rule 23.

## III. DEFENDANT'S CONSTITUTIONAL CHALLENGES FAIL

A defendant who seeks to challenge the constitutionality of a statute can do so as a facial attack or an as-applied attack. Here, PDL asserts facial challenges. *See* MTD at 6-14. "If it does not charge statutory overbreadth, 'a facial challenge must fail where the statute has a plainly legitimate sweep.'" *Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011) (citation omitted). A facial attack is "the 'most difficult challenge to mount successfully,' because it requires a defendant to 'establish that no set of circumstances exists under which the Act would be valid.'" *United States v. Rahimi*, 602 U.S. 680, 693 (2024) (citation omitted). "[T]o prevail" against a facial attack, Plaintiff need only show that the CLP "is constitutional in some of its applications." *Id*.

### A. The Listing Provision Is Not Unconstitutionally Vague

Defendant argues that the PTFA is unconstitutionally vague because it "does not specify how entities can determine whether a phone number is a Colorado mobile number subject to the statute." MTD at 7. Specifically, Defendant complains, without any foundation, that it may not be able to identify a Colorado resident from the listed area code because "an area code is not always [ ] accurate" and that "location data" cannot help because it does "demonstrate whether an individual is a Colorado resident or just visiting." *Id*. This wrong for many reasons. First, that is not a proper vagueness challenge. A statute only "fails to comport with due process" under the vagueness doctrine if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 18 (2010). Here, Defendant plainly knows what is prohibited by the CLP, thus the CLP is not vague. Further, to facially challenge a law as unduly vague, "the complainant must demonstrate that the law is impermissibly vague in all of its applications." *Vill. of*

*Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 497 (1982).[2] Defendant's assertion that it cannot tell whether a telephone number belongs to a Colorado resident is thus too speculative and too narrow to cast the CLP as vague.[3]

**B. The Listing Provision Does Not Violate The Dormant Commerce Clause**

Defendant also raises a defense under the dormant commerce clause ("DCC"), claiming that the burdens imposed by the PTFA are "clearly excessive in relation to the putative local benefits." MTD at 8 (citation omitted). Defendant is wrong. As an initial matter, the argument is premature. *See Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1104 (N.D. Ill. 2017). Further, PDL's argument that compliance with the PTFA on a state-specific basis is impossible is demonstrably false. PDL's B2B lead generation competitors have entered into class action settlements of right-to-publicity cases in which they have represented that they can do precisely what PDL claims is impossible. *See e.g., Ramos et al. v. ZoomInfo Technologies, LLC,* Case No. 21-cv-02032, (N.D. Ill.) at ECF 99 ¶ 16 (screenshot showing at-issue preview pages, with only work address information shown); *id*. at ECF 136 (final approval of California, Illinois, Indiana, and Nevada settlement classes of "residents whose identity was the subject of a directory preview page published by ZoomInfo"); *id*. at ECF 104-1 at 17 (settlement agreement prospective relief on behalf of state-specific classes).[4] It is thus clearly possible for B2B businesses to (1) identify "residents" of specific states, and (2) implement state-resident-specific modifications to their search results. Defendant chooses not to do so.

PDL's argument is also legally flawed. First, the PTFA represents a compelling state interest. *See infra* § III.G. Further, Plaintiff does not seek to apply the CLP to commerce occurring outside of Colorado. Rather, she seeks to hold Defendant accountable for its Colorado-based conduct, including its collection and use of Colorado residents' cellular telephone numbers in violation of a Colorado statute. Courts regularly reject applying the DCC to laws regulating or prohibiting Internet activity directed at a state's consumers. *See, e.g., MaryCLE, LLC v. First Choice Internet, Inc.*, 890 A.2d

---

[2] Also, "[s]tatutes that relate to the economic regulation of businesses are subject to a less strict vagueness test." *See Cunha v. IntelliCheck, LLC*, 254 F. Supp. 3d 1124, 1132 (N.D. Cal. 2017) (cleaned up).

[3] It is also contradicted by the pleadings. *See infra* § IV.; Compl. ¶¶ 19, 22. And regardless, the CLP does not require Defendant know that the listee be a Colorado resident. *Id.*

[4] Attached as Exhibits 4-6 to Plaintiff's Request for Judicial Notice, respectively.

818, 840-45 (Md. Ct. Spec. App. 2006) (upholding Maryland anti-spam email law); *Ferguson v. Friendfinders, Inc.*, 94 Cal. App. 4th 1255, 1263-66 (1st Dist. 2002) (same; California); *Monroy v. Shutterfly, Inc.*, 2017 WL 4099846, at *7 (N.D Ill. Sept. 15, 2017) (upholding Illinois biometric privacy law). Here *Kellman v. Spokeo* is instructive. In that case, a "website that provides information about particular individuals aggregated from various sources" argued that enforcement of the right to publicity laws of Ohio, Indiana, and California would run afoul of the dormant commerce clause because, as the Court, put it, Spokeo "will have to follow different states' laws about what it can and cannot show to users." *Kellman*, 599 F. Supp. 3d at 899. Judge Orrick correctly held that because "this is not a case in which the statutes … directly control commerce wholly outside of their states' borders[,]" nor "prices in other states, which is all that many of the Supreme Court's precedents have been understood to bar[,]" the DCC was inapplicable. *See id.* The same is true here.[5]

### C. The Challenged Conduct Is Not "Speech"

Defendant assumes, without analysis, that its listing and sale of telephone numbers qualify as "speech." *See* MTD at 8. But "speech" is expressive activity "intended to be communicative" and that, "in context, would reasonably be understood … to be communicative." *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 294 (1984). "[T]o bring the First Amendment into play" the Court must find that "[a]n intent to convey a particularized message was present" and that "the likelihood was great that the message would be understood by those who viewed it." *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (cleaned up). Here, there is no "speech" at play because a cellular telephone number listed online and sold is not a message or thought. Such pure "fact[s]" are only "elements of speech[.]" *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 US. 47, 61-62 (2006), qualifying for First Amendment protection only if given "an expressive or communicative 'use'" in a complete speech act intended to express a message. *See Troster v. Pennsylvania State Dept. of Corrections*, 65 F.3d 1086, 1092 (3d. Cir. 1995) (citation omitted).

[5] *See also In re Facebook Biometric Info. Priv. Litig.*, 2018 WL 2197546 (N.D. Cal) (Holding that "application of [Illinois' Biometric Privacy Act] to Illinois users" did not violate DCC because, "[t]his lawsuit is under an [single] state statute on behalf of [a single state's] residents who used Facebook in [that state]" and "[n]othing indicates that liability under BIPA would force Facebook to change its practices with respect to residents of other states.") (cleaned up).

### D. The CLP Is Not Content-Based

Defendant contends that the CLP is content-based because it "'singles out specific subject matter.'" MTD at 13 (quoting *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 169 (2015)). But in *City of Austin v. Reagan Nat'l Advertising of Austin, LLC*, the Supreme Court rejected "the view that *any* examination of speech or expression inherently triggers heightened First Amendment concern." 596 U.S. 61, 73-74, (2022) (emphasis in original) (holding statute distinguishing between signs advertising on-site businesses versus off-site businesses was not content-based). As *City of Austin* clarified, *Reed* was premised on "[t]he First Amendment's hostility to content-based regulation" aimed at "particular viewpoints" and prohibition of "public discussion of an entire topic." *Id.* at 70 (cleaned up). *Reed* deemed the subject regulation content-based because it singled out speech based on whether it "*conveys the message* of directing the public to church or some other 'qualifying event[,]'" and treated "the Church's signs inviting people to attend its worship services … differently from signs *conveying other types of ideas*." 576 U.S. at 164 (emphases added).

Defendant attempts to analogize to *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1121 (9th Cir. 2020) ("IMDB"). *See* MTD at 9-10. But *IMDB* concerned "'free, publicly available' profiles of celebrities—who qualify as public figures" as opposed to "paywalled" cellular telephone numbers of everyday "private individuals." *Lukis*, 542 F. Supp. 3d 831, 843 (quoting *IMDB*). The statute at issue "appear[ed] to target a single entity[,] IMDb.com," and was a speaker-based restriction because "it restricts only a single category of speakers," *IMDB*, 962 F.3d at 1116, 1120. Here, Defendant cannot argue the PTFA is speaker-based because the PTFA applies to any "person." And *IMDB* is reliant on *Reed*, which was abrogated by *City of Austin*. *See Project Veritas v. Schmidt*, 125 F.4th 929, 948 (9th Cir. 2025) (noting how *City of Austin* "undercut[s]" *Reed*).

Defendant also footnote-cites a string of cases for the proposition that restrictions on disclosing phone numbers or similar personal data are content-based. MTD at 9 n.6. But each case analyzed statutes restricting either disclosures of a **<u>limited group</u>** of individuals' contact information or disclosures made by a **<u>limited group</u>** of speakers, rather than the public writ large.[6] The

[6] *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 564 (2011) ("[T]he statute … burdens disfavored speech by disfavored speakers[, pharmaceutical manufacturers]."); *Dex Media West, Inc. v. City of Seattle*, 696 F.3d 952, 957 (9th Cir. 2012) (restriction "regulates only yellow pages directories" rather

restrictions at issue restricted ***whose*** information could be disclosed by ***whom***, thus prohibiting "public discussion of an entire topic." *Reed*, 576 U.S. at 169. Like the regulation at issue in *City of Austin*, the CLP is "agnostic" about the substantive content or message expressed by the speaker. A blanket ban on the commercial listing of cellular telephone number(s) (not a viewpoint in any way) belonging to *any Colorado* resident (rather than, say, only law enforcement officials) in a directory by *anybody* is content-neutral because it does not discriminate by subject matter or speaker.[7] And "absent a content-based purpose or justification," a statute "is content neutral and does not warrant the application of strict scrutiny." *City of Austin*, 596 U.S. at 69. The CLP is thus content neutral.

**E. Statutes Recognizing Privacy Torts Are Not Subject To Strict Scrutiny**

Even if the CLP were content-based, Supreme Court precedent recognizes that when a content-based restriction has a history of "longstanding coexistence … with the First Amendment," courts should not apply strict scrutiny. *Vidal v. Elster*, 602 U.S. 286, 288 (2024); *Atlas*, 758 F Supp. 3d at 336 (Daniel's Law is "privacy statute" and thus not subject to strict scrutiny).

Here, the CLP creates a tort closely related to three traditional privacy torts which have long existed in harmony with the First Amendment. **First**, the CLP resembles the "public disclosure of private information" tort. *See Tonnessen v. Denver Pub. Co.*, 5 P.3d 959, 966 (Colo. App. 2000) (elements of claim in Colorado). The CLP targets "listings" that give publicity to facts generally of no legitimate concern to the public, providing a statutory remedy when the disclosure is done "for a commercial purpose." **Second**, the CLP, by extension, protects the right to control one's name, like the misappropriation-of-name-and-likeness tort. The economic value of the prohibited listings is directly related to the use of individuals' names, as it is impossible to list and sell someone's phone

---

than directories generally); *IMDB*, 962 F.3d at 1116 (statute singles out a single category of speaker); *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1012-13 (E.D. Cal. 2017) (involving "home address or telephone number of any ... California official"); *Atlas Data Priv. Corp. v. We Inform, LLC*, 758 F. Supp. 3d 322, 335 (D.N.J. 2024) ("*Atlas*") (same for law enforcement officers).

[7] Defendant's cases are inapposite for additional reasons. Several held that a statute is content-based if applying the statute "requires the examination" of the disclosure—precisely the test rejected by *City of Austin*. *See Sheehan v. Gregoire*, 272 F. Supp. 2d 1135, 1146 (W.D. Wash. 2003); *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1013 (E.D. Cal. 2017). Others simply assumed that a statute prohibiting disclosure of law enforcement officers' information was facially content-based without explaining how such data in itself constitutes a topic or message. *See Brayshaw v. City of Tallahassee*, 709 F. Supp. 2d 1244 (N.D. Fla. 2010). Commercial listing of phone numbers is neither a "topic" nor "part of a message."

number in a directory without also using their name. The misappropriation-of-name-and-likeness tort "has been recognized throughout most of the United States[.]" *Joe Dickerson & Assocs., LLC v. Dittmar*, 34 P.3d 995, 1001 (Colo. 2001). **<u>Third</u>**, the CLP protects the interests underlying the "intrusion upon seclusion" tort, which "encompasses intrusions into a person's private concerns based upon a reasonable expectation of privacy in that area." *Golec v. Boring*, 2024 WL 5102044, at *8 (Colo. App. Dec. 12, 2024). Preventing the commercial listing of individuals' cell phone numbers makes it harder for third parties to intrude upon their private lives. *See* Compl. ¶¶ 2-4, 8, 24-30.

The "longstanding coexistence" between privacy torts and the First Amendment forecloses the application of strict scrutiny. *See Atlas*, 758 F Supp. 3d at 335 (referring to Supreme Court's long tradition of rejecting strict scrutiny for privacy torts); *Kellman*, 599 F. Supp. 3d at 901 (Noting a "traditional publicity right does not necessarily offend the First Amendment."). "[T]he sensitivity and significance of the interests presented in clashes between [the] First Amendment and privacy rights counsel relying on limited principles that sweep no more broadly than the appropriate context of the instant case." *Fla. Star v. B.J.F.*, 491 U.S. 524, 533 (1989). This is necessary because privacy cases balance free speech with the constitutional interest "in avoiding disclosure of personal matters." *Nixon v. Administrator of Gen. Servs.*, 433 U.S. 425, 457 (1977). When "the exercise of free speech rights conflicts with another fundamental right," reasonable compromises "survive[] strict scrutiny." *Burson v. Freeman*, 504 U.S. 191, 211 (1992). This is enough to defeat Defendant's facial challenge.

### F. The CLP Regulates Commercial Speech[8]

Defendant argues that the CLP is not subject to intermediate scrutiny even though it is limited to listings for a "commercial purpose." MTD at 10. Defendant's argument makes no sense. Defendant first analogizes to *Jackson v. Whitepages*, 2025 WL 2407201 (N.D.W. Va. Aug. 19, 2025) but *Jackson* explicitly found that, because the statute at issue made any disclosure unlawful "and does not otherwise distinguish commercial from noncommercial disclosures," it is not commercial

---

[8] In substantially similar matters, multistate consortiums of attorney generals have submitted *amicus* briefing arguing, *inter alia*, that (1) the PTFA regulates commercial speech, (2) the nonconsensual publication and sale of consumers' private data is commercial speech, and (3) the First Amendment does not protect the nonconsensual publication of consumer cell phone numbers, but even if it did, the PTFA satisfies intermediate scrutiny. *See* Exhibits 1-3 to Plaintiff's Request for Judicial Notice. To the extent a similar brief is not filed here, Plaintiff incorporates those arguments.

speech. *Id.* at *10. Here, the CLP contains precisely the bright line division between commercial and non-commercial conduct that was lacking in *Jackson* and Defendant's other cited cases. Because Defendant's listing of Plaintiff's cellular telephone numbers is purely commercial, and because the CLP, on its face, is only applicable to commercial speech, strict scrutiny cannot apply. *See, e.g.*, *Kolebuck-Utz v. Whitepages Inc.*, 2021 WL 1575219, at *2 (W.D. Wash. Apr. 22, 2021).

PDL also contends that publication of cellular numbers is not "commercial" speech and "economic motivation" does not "transform fully protected speech into commercial speech." MTD at 11. (citation omitted). But the PTFA requires a "listing" be "for a commercial purpose" as an essential element of any claim. CRS § 6-1-304(4)(a)(I). The CLP was thus plainly drafted to exclusively apply to commercial speech, which, as the Supreme Court has held, is "expression related solely to the economic interests of the speaker and its audience." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980) ("*Cent. Hudson*"). The CLP's regulation of speech thus cannot be subject to strict scrutiny.[9]

Defendant's argument oversimplifies the standard for determining whether speech is commercial. While "[c]ommercial speech is usually defined as speech that does no more than propose a commercial transaction[,] ... [c]ourts view this definition as just a starting point, ... and instead try to give effect to a common-sense distinction between commercial speech and other varieties of speech" through "analysis [that] is fact-driven, due to the inherent difficulty of drawing bright lines that will clearly cabin commercial speech in a distinct category." *Ariix, LLC v. NutriSearch Corporation*, 985 F.3d 1107, 1115 (9th Cir. 2021) (cleaned up). Even "speech that does not propose a commercial transaction on its face can still be commercial speech." *Id*. The analysis in *Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. 2016) ("*Hearst I*") is particularly on point. In *Hearst I*, the statute at issue "restrict[ed] the sellers of certain products from disclosing the identity of individuals who purchase those products." *Id.* at 445. The court held that "businesses'

---

[9] Defendant cites *Hilton v. Hallmark Cards*, 599 F.3d 894, 905 n.7 (9th Cir. 2010) for the proposition that its listings cannot be commercial speech because the "listing does not refer to a particular product… it is the product." MTD at 11 (cleaned up). But the *Hilton* court was simply noting that the sale of artistic or expressive materials does not alone change those materials' protected status. Conversely, there is nothing expressive about the cellular telephone numbers at issue here.

increasing ability to profit from the collection and sale of data supports the conclusion that disclosing consumer information is—primarily, if not entirely—an economic act." *Id.* (citation omitted). Even though it was "conceivable that Defendant's disclosures may be used for non-economic purposes[,]" the court still held that "such potential does not dilute the speech's commercial character." *Id.* at 445-46 (citations omitted).[10] Likewise, here, Plaintiff's allegations establish that Defendant's listing of Plaintiff's cellular telephone number is a purely economic act. *See, e.g.*, Compl. ¶¶ 15-23 (explaining how **Defendant lists cellular telephone numbers behind a paywall and sells access for profit**).[11]

Further, "[a] related line of cases has applied an intermediate level of scrutiny, akin to a commercial speech inquiry, to regulations restricting sales of [] data." *People v. Martinez*, 534 P.3d 72, 83 (2023). That line of cases begins with *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 751 (1985), in which the Supreme Court "recognized that not all speech is of equal First Amendment importance" and noted that "[i]t is speech on matters of public concern that is at the heart of the First Amendment's protection." 472 U.S. at 758–59 (cleaned up). The Supreme Court concluded that the credit report contained speech on matters of purely private concern and therefore warranted reduced constitutional protection. *Id.* at 762-63. Specifically, the Supreme Court held that the credit report "was speech solely in the individual interest of the speaker and its specific business audience"; that special protection for such credit reporting was not necessary to ensure that "debate on public issues [will] be uninhibited, robust, and wide-open"; and that, like similarly profit-driven commercial speech, credit reporting was "unlikely to be deterred by incidental state regulation." *Id.* at 762 (cleaned up). Numerous courts have declined to apply strict scrutiny on this basis. *See, e.g.*, *Brooks v. Thomson Reuters Corp.*, 2021 WL 3621837, at *14-16 (N.D. Cal. Aug. 16, 2021). Thus, "[e]ven if the disclosures" at issue "do not strictly satisfy the definition of commercial speech, [such] speech … is subject to many of the same concerns that argue in favor of reduced constitutional protection for commercial speech." *Saunders v. Hearst Television, Inc.*, 711 F. Supp. 3d 24, 33 n.8 (D. Mass. 2024) (cleaned up). "[Defendant's listings] with Plaintiff['s] personal information concern

[10] Indeed, PDL explicitly touts the availability of "accurate contact information" as a boon to its "use case" of "sales and marketing[.]" https://www.peopledatalabs.com/use-cases/sales-and-marketing.

[11] *See also Boelter v. Advance Mag. Publishers Inc.*, 210 F. Supp. 3d 579, 597 (S.D.N.Y. 2016) ("disclosure…and [] sale of [the data] … for solicitation purposes is speech 'related solely to the economic interests of the speaker and its audience.'") (quoting *Cent. Hudson*, 447 U.S. at 561).

[ ] no public issue because [they are] speech solely in the individual interest of the speaker [i.e. Defendant] and its specific business audience [i.e. Defendant's subscribers]." *Brooks*, 2021 WL 3621837, at *15 (cleaned up). "Also, that [Defendant] only shares Plaintiff['s] personal information with its [] subscribers who specifically pay for it, and not with the general public, cuts heavily against concluding that [Defendant's]'s conduct is of public concern." *Id.* "If anything, … the speech at issue here is less of the public's concern than the credit report in *Dun*[] *& Bradstreet* because it involves the personal information of private individuals, not incorporated businesses like the respondent in *Dun & Bradstreet*." *Id.* (cleaned up). "And the speech here is 'solely motivated by the desire for profit,' which 'is a force less likely to be deterred than others,' further counseling in favor of the application of intermediate scrutiny." *Saunders*, 711 F. Supp. 3d at 33 n.8 (quoting *Dun & Bradstreet*, 472 U.S. at 762). Intermediate scrutiny thus applies here.[12]

### G. Assuming *Arguendo* Strict Scrutiny Applies, The CLP Survives

"To satisfy strict scrutiny, a restriction on speech is justified only if the government demonstrates that it is narrowly tailored to serve a compelling state interest." *Meinecke v. City of Seattle*, 99 F.4th 514, 524 (9th Cir. 2024) (cleaned up). The CLP survives this test if it is applied.

**The CLP Serves A Compelling State Interest.** Colorado has a compelling interest in regulating entities like Defendant that encroach on individuals' cell phone privacy. The Supreme Court has frequently emphasized that "[t]he State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society." *Carey v. Brown*, 447 U.S. 455, 471 (1980). And this Circuit has "never held that the interest in privacy ends at one's home." *Victory Processing, LLC v. Fox.* 937 F.3d 1218, 1227 (9th Cir. 2019). Indeed, it is binding authority in this Circuit not only that "[t]he State's interest in protecting the well-being, tranquility, and privacy… is certainly of the highest order in a free and civilized society" but that "the interest in protecting privacy applies with equal force to cellular devices." *Victory Processing, LLC*, 937 F.3d at 1227 (9th Cir. 2019) (cleaned up).

[12] Defendant's MTD fails to argue that the CLP does not survive intermediate scrutiny. Any such argument is waived. *See, e.g. Kolebuck-Utz*, 2021 WL 1575219, at *3 ("Defendant's briefing provides the Court no basis to dismiss Plaintiff's claim on First Amendment grounds.") (cleaned up). Regardless, the CLP clearly survives intermediate scrutiny. *See Cent. Hudson*, 447 U.S. at 566 (discussing standard); *infra* § III.G. (arguing satisfaction of strict scrutiny).

The Colorado Legislature "f[ound], determine[d], and declare[d]" that such "matter[s] **vitally affect[] the public interest**; and, therefore, that the general welfare of the public and the protection of the integrity of the telemarketing industry requires statutory regulation of the commercial use of telephones." CRS § 6-1-301 (emphasis added); *see also Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172, 197 (S.D.N.Y. 2017) ("Hearst II") (the "stated interest in protecting consumer privacy from nonconsensual disclosure to third parties … is a substantial government interest."). Case law has affirmed this state interest in privacy protection in numerous analogous contexts. This includes cases on the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. *See, e.g.*, *Gallion v. Charter Commc'ns Inc.*, 287 F. Supp. 3d 920, 928 (C.D. Cal. 2018) (collecting cases). It also includes case law on states' right of publicity statutes. *See, e.g.*, *Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d at 900; *Kolebuck-Utz*, 2021 WL 1575219, at *3. And it has been recognized by case law about the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, and its state analogues. *See, e.g.*, *Saunders*, 711 F. Supp. 3d at 33 (D. Mass. 2024); *Hearst I*, 192 F. Supp. 3d at 448.

**The CLP Is Narrowly Tailored.** "A statute is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." *Victory Processing, LLC*, 937 F.3d at 1227–28 (cleaned up). Here, the CLP does exactly that: it only bars listings of cellular telephone numbers that are done knowingly, in a directory, for a commercial purpose, without affirmative consent. CRS § 6-1-304(4)(a)(I). Defendant is not prohibited from commercially listing cellular numbers, it simply must first obtain affirmative consent. Defendant nonetheless argues that the CLP is unconstitutionally underinclusive because it "regulates one category of speech, but allows others to go untouched[.]" MTD at 12. But this ignores the statutory purpose is preventing commercial abuse of cellular phones, not barring people from voluntarily sharing their cell phone numbers. The CLP is sufficiently inclusive to advance this compelling interest. "Although a law's underinclusivity raises a red flag, the First Amendment imposes no freestanding underinclusiveness limitation." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 449 (2015) (cleaned up). The Supreme Court has "upheld laws—even under strict scrutiny—that conceivably could have restricted even greater amounts of speech in service of their stated interests." *Id.* (collecting cites). Pertinent here, PDL discloses cellular numbers in a way that greatly expands access to that information. *See Atlas*, 758 F. Supp. 3d at 338

(rejecting underinclusivity argument because there is a "'difference between public records that might be found after a diligent search … and a computerized summary located in a single clearinghouse …") (citation omitted).

Defendant also argues that the CLP "seemingly" excludes many non-governmental sources" through its exemption of "churches, schools, political organizations, and others who might share the same phone numbers for different ends." MTD at 13. This is evidence that the law is narrowly tailored, not that it is underinclusive. Individuals willingly provide their phone numbers to the groups listed by Defendant. When somebody receives a call from their church, their own or their child's school, or their chosen political organization, that is precisely the type of call they can "expect [] to be important." Compl. ¶ 2. And these entities are not profiteering from Colorado residents' data by listing them in for-profit directories without consent, as Defendant does.

**Less Restrictive Means Are Less Effective.** Defendant argues that the CLP is not the least restrictive means to advance the interests asserted. Defendant is wrong. It is common sense that by preventing data brokers, like Defendant, from listing cell phone numbers, telemarketers will by stymied from reaching Coloradoans. Defendant suggests three flawed "less restrictive alternatives:"

**Targeting wrongful conduct, not protected speech:** Defendant's proposal that Colorado can prevent fraud through other laws such as the TCPA and various other state-level laws (MTD at 13) ignores the PTFA's structure and takes an overly narrow view of the specific state interests advanced by the CLP. CRS §§ 6-1-304(1)-(3) *do* ban "fraud and harassment" by commercial telephone sellers. The CLP, meanwhile, protects the separate interest of privacy, safety, and autonomy of Colorado residents in relation to their cell phones by prohibiting the kind of unauthorized, for-profit use of personal information at issue here.

**Exempting already-public information:** Defendant's proposal that listings of "cell phone numbers that the government or owners previously disclosed publicly could be excluded from coverage" by the CLP (MTD at 14) is a less effective alternative to the CLP because, as outlined *supra* § III.F (citing *Atlas*), even if an individual Colorado resident's cellular telephone number is already in some manner publicly available, Defendant's listings redisclose Plaintiff's and class members' cell phone numbers in a packaged and easily searchable form, increasing accessibility.

**Limiting (Statutory) Remedies:** PDL argues that Colorado could "enact stricter penalties on acts of fraud or harassment" and "lesser penalties, such as injunctive relief" to "combat the harms the PTFA seeks" to prevent. MTD at 14. But Defendant's non-compliance with the CLP, even *with* statutory remedies available, belies this point. "[T]he economic motive driving the disclosure of consumer identifying information makes the speech more 'durable' and less likely to be deterred by government regulation" absent statutory damages. *Hearst I*, 192 F. Supp. 3d at 446 (citation omitted).

## IV. PLAINTIFF STATES A CLAIM UNDER THE CLP

Defendant argues that Plaintiff "fails to allege any facts indicating that PDL had any awareness her number was a *Colorado mobile number*[.]" MTD at 15. But knowledge is only required by the Commercial Listing Provision as to whether the number is a cellular telephone number. *See* Colo. Rev. Stat. § 6-1-304(4)(a)(I) (no knowledge requirement as to Colorado residency). Regardless, Plaintiff has so alleged because "[a]ctual knowledge" in Colorado means "one's awareness of the objective facts." *Nelson v. United States*, 915 F.3d 1243, 1249 (10th Cir. 2019). "Knowledge may be proved either by direct evidence of actual knowledge, or by circumstantial evidence." *Id.* at 1254 (cleaned up, citation omitted). The Complaint alleges that Defendant has actual knowledge of Plaintiff's location and that her number was cellular. *E.g.* Compl. ¶ 19 (Alleging Defendant generates lists of people and their cell phone numbers by "searching for individuals using filters such as … location"). As such, Defendant "knows" where Plaintiff and class members are located. At this stage, that is sufficient.

Finally, Defendant argues that Plaintiff offers "no facts" supporting that Defendant did not request or receive consent to list Plaintiff's cell phone number. MTD at 8. But Defendant bears the burden of demonstrating there was consent, because consent it is an affirmative defense. Second, Plaintiff *has* explicitly alleged she did not consent to Defendant's listing. Compl. ¶ 10.[13]

## CONCLUSION

For the foregoing reasons, Defendant's motion should be denied in its entirety. In the alternative, Plaintiff requests leave to amend to address any deficiencies the Court may identify.

---

[13] It is unclear what more Plaintiff can allege to prove a negative. Nor are Plaintiff's consent allegations "undercut" by the fact that she once gave out her cell phone number elsewhere. *See* MTD at 15 n.13. "Plaintiff has no relationship with" and "had never heard of Defendant." Compl. ¶ 10.

Dated: December 10, 2025.

**BURSOR & FISHER, P.A.**

By: *[/s/ Daniel S. Guerra](#)*
Daniel S. Guerra

Daniel S. Guerra (State Bar No. 267559)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Matthew A. Girardi*
50 Main St., Ste. 475
White Plains, NY 10506
Telephone: (914) 874-0708
Facsimile: (914) 206-3656
Email: mgirardi@bursor.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese (*pro hac vice forthcoming*)
1330 Avenue of the Americas, 32nd Floor
New York, NY
Telephone: (646) 837-7127
Facsimile: (212) 989-9163
Email: jmarchese@bursor.com

**admitted pro hac vice*

*Attorneys for Plaintiff*