Michael Bleicher (SBN 313892)
michael.bleicher@zwillgen.com
ZWILLGEN PLLC
1900 M Street NW, Suite 250
Washington, DC 20036
Telephone: (202) 706-5251

*Attorney for Defendant*
*People Data Labs, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JANELLE COCHRANE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PEOPLE DATA LABS, INC.,<br><br>Defendant. | Case No.: 25-cv-9533-RFL<br><br>Assigned to: Hon. Rita F. Lin<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>Judge: Hon. Rita F. Lin<br>Hearing Date: January 20, 2026<br>Time: 10:00 a.m.<br>Courtroom: 15-18th Floor<br><br>Removed from San Francisco Superior Court Case No. CGC-25-629675 |

## TABLE OF CONTENTS


INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................. 2

I. Plaintiff hasn't alleged the minimum to show statutory standing exists. .......................... 2

   a. Name and likeness cases are inapposite ........................................................... 3

   b. Conclusory allegations do not show the "public impact" required ............................ 4

II. Plaintiff doesn't allege a basis for seeking class-wide statutory damages ......................... 4

III. Plaintiff's Opposition fails to show the Listing Provision is constitutional. ...................... 5

   A. The Listing Provision remains unconstitutionally vague .......................................... 5

   B. The Listing Provision continues to violate the First Amendment on its face. ............... 6

      1. The Listing Provision regulates content-based speech. ........................................ 6

      2. The Listing Provision fails strict scrutiny. ........................................................ 8

   C. The Listing Provision violates the Dormant Commerce Clause ("DCC"). ..................... 9

IV. Plaintiff does not adequately plead a violation of the Listing Provision. ......................... 10

CONCLUSION ............................................................................................................ 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ainscough v. Owens*,
90 P.3d 851 (Colo. 2004) .......... 2

*American Compensation Insurance Co. v. McBride*,
107 P.3d 973 (Colo. App. 2004) .......... 2, 3

*Animal Legal Def. Fund v. Wasden*,
878 F.3d 1184 (9th Cir. 2018) .......... 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4

*Atlas Data Priv. Corp. v. We Inform, LLC*,
758 F. Supp. 3d 322 (D.N.J. 2024) .......... 8

*Bolger v. Youngs Drug Prods. Corp.*,
463 U.S. 60 (1983) .......... 7

*Bonanno v. The Quizno's Franchise Co.*,
2008 WL 638367 (D. Colo. Mar. 5, 2008) .......... 4

*Camacho v. Control Grp. Media Co.*,
2022 WL 3093306 (S.D. Cal. July 18, 2022) .......... 3

*City of Austin v. Reagan National Advertising of Austin LLC*,
596 U.S. 61 (2022) .......... 6-7

*Cunha v. IntelliCheck, LLC*,
254 F. Supp. 3d 1124 (N.D. Cal. 2017) .......... 6

*Dex Media W., Inc. v. City of Seattle*,
696 F.3d 952 (9th Cir. 2012) .......... 6, 7

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
472 U.S. 749 (1985) .......... 6

*Hall v. Walter*,
969 P.2d 224 (Colo. 1998) .......... 2, 3

*Holder v. Humanitarian L. Project*,
561 U.S. 1 (2010) .......... 5

*IMDb.com Inc. v. Becerra*,
962 F.3d 1111 (9th Cir. 2020) .......... 6, 7, 8

*Jackson v. Whitepages, Inc.*,
2025 WL 2407201 (N.D.W. Va. Aug. 19, 2025) .......... 7-8

*Kellman v. Spokeo, Inc.*,
599 F. Supp. 3d 877 (N.D. Cal. 2022) ........ 3, 9-10

*Kolender v. Lawson*,
461 U.S. 352 (1983) ........ 5

*Nelson v. United States*,
915 F.3d 1243 (10th Cir. 2019) ........ 10

*Pike v. Bruce Church, Inc.*,
397 U.S. 137 (1970) ........ 10

*Rivera v. Google, Inc.*,
238 F. Supp. 3d 1088 (N.D. Ill. 2017) ........ 9

*Rubin v. Coors Brewing Co.*,
514 U.S. 476 (1995) ........ 6

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) ........ 1, 5

*Sorrell v. IMS Health, Inc.*,
564 U.S. 552 (2011) ........ 6

*Tulips Invs., LLC v. State ex rel. Suthers*,
340 P.3d 1126 (Colo. 2015) ........ 9

*United States v. Playboy Ent. Grp.*,
529 U.S. 803 (2000) ........ 8, 9

**Statutes**

C.R.S. § 6-1-113 ........ 4

C.R.S. § 6-1-301 ........ 9

C.R.S. § 6-1-304 (“PTFA”) ........ *passim*

C.R.S. § 6-1-305 ........ 4

Colorado Consumer Protection Act (“CCPA”) ........ 1, 2, 4

**Other Authorities**

Fed. R. Civ. P. 23 ........ 1, 5

U.S. Const. amend. I ........ 5, 6, 7, 8

U.S. Const. art. I, § 8, cl. 3 (Dormant Commerce Clause) ........ 5, 9

## INTRODUCTION

Plaintiff's Opposition to People Data Labs' ("PDL's") Motion to Dismiss ("Motion") confirms that she does not, and cannot, allege a concrete injury traceable to a violation of Colo. Rev. Stat. ("C.R.S.") § 6-1-304(4)(a)(I). Plaintiff does not dispute that she experienced no telemarketing fraud, received no harassing phone calls, or indeed suffered any consequence at all as a result of her number allegedly appearing in PDL online sales lead platform. In fact, Plaintiff does not even allege that any third party ever viewed her number on PDL's platform. Accordingly, she cannot demonstrate statutory standing under the Colorado Consumer Protection Act ("CCPA") because there is no connection between the alleged statutory violation and *any* current or future injury.

Instead, Plaintiff strains to recharacterize the Prevention of Telemarketing Fraud Act, C.R.S. § 6-1-304 ("PTFA"), as a right of publicity statute. This repurposing doesn't work: Plaintiff doesn't allege that PDL used her name or likeness for a commercial purpose, and the PTFA only covers using mobile phone numbers. As Plaintiff concedes, Colorado's legislature unambiguously declared its intent in enacting the PTFA was to prevent telemarketing fraud, not establish a statutory right of publicity in one's mobile telephone number. Thus, claiming loss of control over the publicity of her phone number diverges in both kind and degree from the harm the statute was designed to prevent.

Nor may Plaintiff cast off the Colorado legislature's policy determination that statutory penalties are unavailable in a class action by suing in federal court. In the Tenth Circuit, Justice Stevens' concurrence in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.* guides this Court's determination of whether to apply state or federal procedural rules to plaintiffs' claims. 559 U.S. 393 (2010). Where, as here, applying Rule 23 would enable Plaintiff to recover statutory penalties otherwise prohibited under Colorado law, it would plainly "abridge, enlarge or modify any substantive right," and thus the state law controls.

Plaintiff's defense of the PTFA's constitutionality fares no better. In response to PDL's argument that § 6-1-304(4)(a)(I) (the "Listing Provision") is an unconstitutional prior restraint on protected speech, Plaintiff and amici curiae[1] argue it targets only commercial speech and withstands

[1] *See* Plaintiff's Request for Judicial Notice ("RJN"), Exs. 1-3, ECF 16.

intermediate scrutiny. But a speaker's economic motive does not establish commercial speech; rather, the content must *only* propose a commercial transaction. The Listing Provision prohibits *any* display of a telephone number in a commercial directory, regardless of whether the display is used in advertising or other promotional activity. It therefore must withstand strict scrutiny, which both Plaintiff and amici concede it cannot do. It is facially unconstitutional.

## ARGUMENT

### I. Plaintiff hasn't alleged the minimum to show statutory standing exists.

Plaintiff wrongly argues that because the CCPA contains a private cause of action, alleging *any* violation—no matter how superficial the pleading—establishes statutory standing. Not so: although "deprivation[] of [a] legally created right[]" *can* establish injury-in-fact for CCPA purposes, courts applying this rule require more than the speculative allegations that Plaintiff relies on here. Opp. at 2 (quoting *Ainscough v. Owens*, 90 P.3d 851, 856 (Colo. 2004)).

Plaintiff agrees that she must "demonstrate[e] (a) injury in fact; (b) to a legally protected interest." Opp. at 1 (quoting *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998)); *cf.* ECF 12 ("Mot.") at 4. As the Colorado Supreme Court explained in a case Plaintiff cites, CCPA standing is "conveyed by neither the remote possibility of a future injury nor an injury that is overly 'indirect and incidental' to the defendant's action." *Ainscough*, 90 P.3d at 856. For example, the *Ainscough* plaintiffs "specifically allege[d] that they were using a state-provided service—some for decades—but [were] now precluded from doing so by a change in government policy and practice." *Id.* at 857. As a result, they claimed, they lost the right going forward to "to apply for a deduction [for employee association dues] and receive a non-arbitrary ruling on their application"; the court held this established standing. *Id.* at 858. In other words, the future losses were highly likely to result from the defendant's alleged statutory violation.

*American Compensation Insurance Co. v. McBride*, another case Plaintiff relies on, is similar. *See* Opp. at 2 (citing 107 P.3d 973, 976 (Colo. App. 2004)). That case concerned an insurer's obligation to pay workers' disability benefits; statutory standing existed for the insurer because an Industrial Claims Appeal Office order meant that in the future, the insurer faced "incurring additional liability to repay [the worker] . . . or, alternatively, legal fees to recover its payments . . . .

Conversely, had [the insurer] not applied the administrative lien to PPD benefits, it risked having sanctions imposed . . . ." *Am. Comp. Ins.*, 107 P.3d at 976.[2]

None of these harms was merely an abstract "deprivation of a legally created right"; rather, the alleged "deprivation" made a specific future injury highly likely. Opp. at 2. But Plaintiff hasn't identified any similar injury here. Instead, the Complaint provides a laundry list of hypothetical harms, any of which Plaintiff speculates could *perhaps* happen at some point and *perhaps* be traced back to PDL's making her number available. (But she doesn't allege that this is the only time her number has been made available online, with or without her consent.)[3] *See* Compl. ¶¶ 27-30. Plaintiff identifies no authority that removes the CCPA's version of an "injury in fact" requirement from the standing analysis and permits this catch-all, speculative pleading. *Hall*, 969 P.2d at 235.

**a. Name and likeness cases are inapposite.**

Plaintiff also cannot analogize this case to ones involving right of publicity claims to manufacture a cognizable "economic injury" from the alleged availability of her phone number. *See* Opp. at 2. She tries to address her failure to plead any loss of real, quantifiable value associated with her phone number by comparing the Complaint to others alleging *common law* injuries based on misappropriation of name or likeness. *See id*. (citing *Camacho v. Control Grp. Media Co.*, 2022 WL 3093306, at *28 (S.D. Cal. July 18, 2022) and *Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 889 (N.D. Cal. 2022)). But Plaintiff cannot import the "economic injury" element from a right of publicity allegation because she does not allege the essential prerequisite for a common law right of publicity claim: publicity. Though Plaintiff alleges that her number was on PDL's platform and "used . . . to advertise and/or actually sell products and services," Compl. ¶ 10, she does not allege that any third party ever viewed her number on PDL's platform or saw any advertisements involving the availability of her number. Without those facts there is no publicity and no harm to any right of

---

[2] And *Hall* itself concerned *existing* "injur[ies] to [plaintiffs'] property from having their locks cut, their fences either cut or knocked down, and lease opportunities lost" as a result of alleged deceptive trade practices. 969 P.2d at 236. Again, this is a far cry from the possibility of the Complaint's laundry list of future hypothetical harms.

[3] By the same token, Plaintiff's failure to allege any actual or reasonably imminent injury means she has not suffered injury under Article III, contrary to her arguments. *See* Opp. at 1-3. But if the Court disagrees, it may remand this case to state court *sua sponte*.

publicity. The mere inclusion of her number through online platform making it, theoretically, publicly accessible, alleges nothing even remotely harmful and does not suffice to show standing.

**b. Conclusory allegations do not show the "public impact" required.**

Finally, the Opposition cannot transform the Complaint's conclusory and recitative allegations into pleading that shows the "public impact" required by the CCPA. *See* Opp. at 2. Plaintiff argues that the Complaint alleges "public impact" because the proposed class includes "thousands of individuals," but the Complaint does not contain a single allegation substantiating that the proposed class is anywhere near that numerous. Opp. at 3 (citing Compl. ¶¶ 6, 11, 31, 33); *cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"). Plaintiff's own authority highlights the deficiency. In *Bonanno v. The Quizno's Franchise Co.*, a putative class action complaint satisfied the "public impact" requirement because it identified "over 3,000 consumers affected by the challenged conduct" and explained how plaintiff arrived at that number. 2008 WL 638367, at *5 (D. Colo. Mar. 5, 2008). Here, though, Plaintiff does not allege facts to conclude that *any* Coloradans have been cognizably "affected" by the challenged conduct, much less an informed estimate of the total number—just as she fails to allege any basis for her own statutory standing. *See* Compl. ¶¶ 10, 27-28, 46-47. Given these deficiencies, Plaintiff hasn't sufficiently alleged public impact, such that recitations about unequal bargaining power (*see* Opp. at 3), even if the Court credited them, aren't enough.

**II. Plaintiff doesn't allege a basis for seeking class-wide statutory damages.**

Plaintiff does not directly address PDL's argument that because (1) the CCPA allows statutory damages for individual claims, but not class claims; and (2) the PTFA also allows statutory damages for individual claims and mentions class claims; and therefore (3) class plaintiffs must plead and prove actual damages. *See* Mot. at 5-6 (collecting citations). Plaintiff appears to concede that class-wide statutory damages are not available under C.R.S. § 6-1-113, but she argues that C.R.S. § 6-1-305 "guarantees" the statutory damages barred by C.R.S. § 6-1-113. Opp. at 3. But Plaintiff doesn't explain how the mere "absence" of "prohibitionary language" in Section 305 would pre-empt Section 113's express prohibition, given that the two sections are part of the same law, and the Colorado

legislature has repeatedly decided *not* to amend the PTFA to provide for class action statutory damages. *See* Mot. at 6 (collecting authority).

Plaintiff also incorrectly applies *Shady Grove* by claiming that regardless of the statutory language, Federal Rule of Civil Procedure 23 should effectively override the Colorado legislature and allow aggregation of class-wide statutory damages. *See* Opp. at 4 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 409 (2010)). But *Shady Grove* does not permit plaintiffs to aggregate statutory penalties barred by substantive state law. *Shady Grove* found that a New York general rule prohibiting all class remedies unless specifically authorized by statute was "procedural" for this purpose (*id.*), but as noted in the concurrence by Justice Stevens, Rule 23 cannot "abridge, enlarge or modify" substantive rights—something *Shady Grove* does not change. *Id*. at 418 (Stevens, J., concurring). CCPA's and PTFA's remedies are part of the substantive rights those statutes define. If Plaintiff were correct, this Court would be significantly expanding the substantive rights of Coloradans—specifically, creating a right to receive statutory damages as part of a class—when the Colorado legislature did not so provide. *Shady Grove* prevents this and leaves the Colorado legislature's decision intact.

**III. Plaintiff's Opposition fails to show the Listing Provision is constitutional.**

Even if the Court finds that Plaintiff has statutory standing under Colorado law (she does not), Plaintiff's claim must be dismissed because the Listing Provision is an unconstitutionally vague provision that violates the Dormant Commerce Clause and imposes a content-based restriction on speech that does not survive strict scrutiny in violation of the First Amendment.

**A. The Listing Provision remains unconstitutionally vague.**

Plaintiff agrees that a statute is constitutionally vague if it does not provide "fair notice of what is prohibited" but relies on conclusory statements and circular logic to avoid engaging directly with PDL's arguments. Opp. at 4 (quoting *Holder v. Humanitarian L. Project*, 561 U.S. 1, 18 (2010)). First, Plaintiff claims that "Defendant plainly knows what is prohibited by the [Listing Provision]," so it cannot be vague. *Id*. Setting aside the PDL's detailed explanation of why the Listing Provision *doesn't* provide fair notice of the conduct it prohibits (*see* Mot. at 6-7), the PTFA must also "describe with sufficient particularity what a[n] [entity] must do in order to satisfy the statute." *Kolender v. Lawson*,

461 U.S. 352, 361 (1983). As explained in the Motion, though, it does not. *See* Mot. at 7. And the PTFA's specified applicability to businesses doesn't change the vagueness analysis (*see* Opp. at 5, n.2): even though the PTFA concerns a specific topic, and even if a business "consult[s] relevant legislation in advance of action," the PTFA's vagueness defects remain. *Cunha v. IntelliCheck, LLC*, 254 F. Supp. 3d 1124, 1132 (N.D. Cal. 2017).

**B. The Listing Provision continues to violate the First Amendment on its face.**

Plaintiff's Opposition also fails to show the Listing Provision does not violate the First Amendment. The Listing Provision's prohibition on listing Colorado mobile numbers contravenes the First Amendment because it is a content-based restriction that does not survive strict scrutiny.

**1. The Listing Provision regulates content-based speech.**

Extensive precedent makes clear that the PTFA targets "speech." Plaintiff argues that it does not because a phone number "is not a message or thought" (Opp. at 6), but a Colorado mobile number is factual information, and "the creation and dissemination of information are speech within the meaning of the First Amendment." *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 570 (2011); *accord Rubin v. Coors Brewing Co.*, 514 U.S. 476, 481 (1995) (factual information on beer labels constitutes speech); *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1120 (9th Cir. 2020) (facts of age and date of birth are speech); *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 957 (9th Cir. 2012) (same, as to phone numbers in the yellow pages); *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 759 (1985) (same, as to credit reports).

Plaintiff next claims the Listing Provision is not content-based because it is not aimed at "particular viewpoints" or the "prohibition of public discussion of an entire topic." Opp. at 7. Plaintiff argues that *City of Austin v. Reagan National Advertising of Austin LLC* negates the notion that "any examination of speech or expression inherently triggers heightened First Amendment concern." Opp. at 7 (citing 596 U.S. 61, 73-74 (2022)). But in *City of Austin*, the Supreme Court deemed a statute regulating business solicitation signs based on the *location* of the speech to be content neutral and explicitly distinguished it from "regulations that discriminate based on the topic discussed or the idea or message expressed," which it confirmed would be content-based and therefore constitutionally

suspect. 596 U.S. at 73-74. In contrast, the Listing Provision precludes speech based on its subject matter—Colorado mobile phone numbers. *See* Mot. at 9-10.

Plaintiff next claims the Listing Provision is not a content-based restriction because it applies to "any person" (Opp. at 7) rather than "restrict[ing] only a single category of speakers," like the regulation examined in *IMDb.com*. 962 F.3d at 1120. But while the *IMDb.com* court found the restriction targeting a single category of speakers "troubling," Plaintiff identifies no authority—including *IMDb.com*—providing that a restriction does not violate the First Amendment if it restricts more than one category of speakers. Opp. at 7. Plaintiff further argues that the cases PDL cites in its Motion, all of which found restrictions content-based where the statutes restrict "disclosures of **<u>a limited group</u>** of individual's contact information" or "disclosures made by **<u>a limited group</u>** of speakers" are distinguishable because those laws "restricted ***whose*** information could be disclosed by ***whom***." Opp. at 7-8 (emphasis in original); *see* Mot. at 9, n.6. But the Listing Provision does precisely that: it regulates the disclosure of Coloradans' (a limited group) mobile numbers by a limited group of speakers—entities that knowingly list a Coloradan's mobile number in a directory.

Nor is the Listing Provision subject to intermediate scrutiny because it does not regulate "purely commercial" speech. *See* Opp at 10. As Plaintiff concedes, "economic motivation… would clearly be insufficient by itself to turn the materials into commercial speech" subject to less exacting review. *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 67 (1983). Instead, the proper inquiry is whether the speech does more than propose a commercial transaction. *See Dex Media W.*, 696 F.3d at 957. The PTFA targets factual information provided in PDL's database, not an advertisement or solicitation. Plaintiff does not explain how the Listing Provision's requirement that a "listing" be "for a commercial purpose" (C.R.S. § 6-1-304(4)(a)(I)) changes the fact that it targets the information contained *in* the listing itself, which does not "propose a commercial transaction." *Id.* at 959. If any speech made for a commercial purpose were less protected, then arguably speech in "newspapers, magazines, television programs, radio shows, and similar media" would be subject to intermediate scrutiny whenever there was a financial or transactional interest involved—but all of those forms "are entitled to full First Amendment protection," *as are* "telephone directories." *Id.* at 965; *see also Jackson v. Whitepages, Inc.*, 2025 WL 2407201, at *10 (N.D.W. Va. Aug. 19, 2025) ("disclosing an

address or phone number states a fact that could be used for any number of noneconomic purposes, such as promoting transparency or allowing a user . . . to locate an old friend who has moved"), *appeal filed sub nom. Michael Jackson v. Thryv, Inc.*, No. 25-2123 (4th Cir. Sept. 19, 2025).

Plaintiff's last-ditch effort to remove the Listing Provision from within strict scrutiny's ambit by analogizing the Listing Provision to common law privacy torts fares no better. *See* Opp. at 8-9. Plaintiff's own authority plainly rejects the idea that laws restricting speech about private information should be treated as "public disclosure of private facts" or name-and-likeness torts rather than speech laws: "neither [the Ninth Circuit], nor the Supreme Court, has held that content-based restrictions on public speech touching on private issues escape strict scrutiny." *IMDb.com*, 962 F.3d at 1123. *See also Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1204 (9th Cir. 2018) (reasoning the state privacy statute "is constitutional only if it withstands strict scrutiny"). Instead, Plaintiff cherry-picks favorable language about the "coexistence" of privacy torts and speech laws from a New Jersey District Court opinion that is on appeal before the Third Circuit and conflicts with binding precedent. *See* Opp. at 9 (quoting *Atlas Data Priv. Corp. v. We Inform, LLC*, 758 F. Supp. 3d 322, 335 (D.N.J. 2024)). But even if statutes that *resemble* privacy torts must be analyzed under intermediate scrutiny (and they don't), the Listing Provision does not concern traditionally recognized privacy interests like one's name and likeness: there is no established right to or expectation of the privacy of one's mobile phone number.

**2. The Listing Provision fails strict scrutiny.**

Plaintiff fails to show the Listing Provision survives strict scrutiny. To survive strict scrutiny, a content-based restriction must be narrowly tailored to serve a compelling interest. *United States v. Playboy Ent. Grp.*, 529 U.S. 803, 804 (2000). The Listing Provision does neither. Accordingly, it violates the First Amendment.

***First***, Plaintiff's Opposition fails to identify a compelling state interest. Plaintiff proffers "cell phone privacy" as the compelling state interest. Opp. at 12. But Plaintiff provides no support for an established right to cell phone privacy. Plaintiff merely points to authorities referencing a state interest in "well-being, tranquility, and privacy." *Id*. In implying there is an inherent right to the privacy of one's mobile phone number, Plaintiff ignores decades of social practice in which

individuals, the state of Colorado, and possibly Plaintiff have publicly published mobile phone numbers. *See* Mot. at 12. This is particularly glaring because the PTFA also applies to mobile *business* numbers.

***Second***, Plaintiff does not show the Listing Provision protects the unrecognized right to "cell phone privacy" by *the least* restrictive means. It is not enough for a restriction to target a compelling state interest: "[i]f a less restrictive alternative would serve the Government's purpose, the legislature ***must*** use that alternative." *Playboy*, 529 U.S. at 813 (emphasis added). PDL's Motion provides several less restrictive means by which Colorado could regulate telemarketing fraud and identity theft—the state interests the Colorado legislature identified as the impetus for the PTFA's passage. *See* Mot. at 13-14; C.R.S. § 6-1-301. And for the same reasons as the Listing Provision would fail strict scrutiny (*see supra*, Section III(B)(2)), the Listing Provision would not survive intermediate scrutiny, either. *See* Opp. at 12 n.12.

**C. The Listing Provision violates the Dormant Commerce Clause ("DCC").**

Plaintiff also fails to show the Listing Provision does not violate the DCC. First, PDL's DCC argument is not premature. Plaintiff cites to *Rivera v. Google, Inc.* wherein the Northern District of Illinois determined the defendant's DCC challenge was premature because Illinois law has a presumption against extraterritoriality, and the court determined the Illinois Privacy Act was neither intended to apply extraterritorially nor has extraterritorial application. 238 F. Supp. 3d 1088, 1104 (N.D. Ill. 2017). However, Colorado law does *not* have a presumption against extraterritoriality, and the Listing Provision necessarily demands extraterritorial application. *See, e.g.*, *Tulips Invs., LLC v. State ex rel. Suthers*, 340 P.3d 1126, 1136 (Colo. 2015) (determining extraterritorial application of Colorado consumer protection statute using standard methods of statutory interpretation). The inability of many entities to determine with accuracy whether a mobile number is a Colorado number given the imprecise data points to which the entities have access generates an inherently extraterritorial effect, regardless of whether Plaintiff intends to apply the Listing Provision beyond Colorado's borders or not. Put differently, to comply with the Listing Provision, businesses like PDL must remove all mobile numbers (including those outside of Colorado), that have an undefined location but *could* have a connection to Colorado. Therefore, unlike the statute in *Kellman v. Spokeo*,

the Listing Provision implicates the DCC because this is "a case in which the statut[e] *preclude[s]* economic activity that takes place *wholly* outside of [the] state['s] borders." 599 F. Supp. 3d. at 899 (emphasis in original); *see* Opp. at 6.

Second, as discussed *supra* in Section III(B)(2), "cell phone privacy" is not an established right or compelling state interest. Even if it were, the applicable inquiry concerns whether the burden on interstate commerce clearly exceeds the local benefit. *See Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). The burden imposed on commerce outside of Colorado by the Listing Provision exceeds any local benefit because, although it attempts to regulate unsolicited telemarketing directed toward Coloradans, Plaintiff's application would transform whether or to what extent B2B companies like PDL can offer business sales intelligence products nationwide. The resulting mismatch in regulatory objective and Plaintiff's intended application further underscores the clearly excessive burden placed on interstate commerce in violation of the DCC.

**IV. Plaintiff does not adequately plead a violation of the Listing Provision.**

<u>Plaintiff does not respond to, and thus concedes, PDL's argument that the Complaint fails to allege that PDL "listed" a phone number in a "directory."</u> And she fails to explain how the Complaint pleads that PDL "knowingly" provided Plaintiff's phone number. *See* Opp. at 15; Mot. at 7-8. Plaintiff suggests that the PTFA only requires "knowledge . . . as to whether the number is a cellular telephone number," not Colorado residency. Opp. at 15. But the Complaint pleads no facts showing that PDL "knows" any number *is* a cellular number, so this falls flat. *See* Compl. ¶¶ 20, 21, 25, 42 (alleging display of "mobile number" without alleging a single fact showing whether or how PDL would *know* it was a mobile number). Nor does an allegation that PDL users can search for entries using a location parameter show that PDL knows Plaintiff is in Colorado because the parameter's existence isn't "direct evidence of actual knowledge or circumstantial evidence" Opp. at 15 (quoting *Nelson v. United States*, 915 F.3d 1243, 1254 (10th Cir. 2019)). The Court cannot jump to conclusions based only on the Complaint's conclusory recitation of the statutory language.

**CONCLUSION**

For the foregoing reasons, PDL respectfully requests that the Court dismiss Plaintiff's claim with prejudice.

Dated: December 17, 2025

Respectfully submitted,

ZWILLGEN PLLC

By: */s/ Michael Bleicher*

Michael Bleicher (SBN 313892)
Michael.bleicher@zwillgen.com

*Attorney for Defendant*
*People Data Labs, Inc.*