**BURSOR & FISHER, P.A.**
Daniel S. Guerra (State Bar No. 267559)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: dguerra@bursor.com

**BURSOR & FISHER, P.A**.
Joseph I. Marchese (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-mail: jmarchese@bursor.com

**BURSOR & FISHER, P.A.**
Matthew A. Girardi (*Pro Hac Vice*)
50 Main St., Ste. 475
White Plains, NY 10506
Telephone: (914) 874-0708
Facsimile: (914) 206-3656
Email: mgirardi@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANELLE COCHRANE, on behalf of herself and all others similarly situated,<br><br>                              Plaintiff,<br><br>     v.<br><br>PEOPLE DATA LABS, INC.,<br><br>                              Defendant. | Case No. 3:25-cv-09533-RFL<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:  June 30, 2026<br>Time: 10:00 a.m.<br>Ctrm: 15, 18th Floor<br>Judge: Hon. Rita F. Lin |

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:25-CV-09533-RFL

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on June 30, 2026 at 10:00 a.m. or as soon thereafter as counsel may be heard by the above-captioned Court, located at 450 Golden Gate Avenue, Courtroom 15, 18th Floor, San Francisco, California 94102 in the courtroom of Hon. Rita F. Lin, Plaintiff Janelle Cochrane ("Plaintiff"), by and through their undersigned counsel of record, will move, pursuant to Fed. R. Civ. P. 23(e), for the Court to: (i) grant preliminary approval of the proposed Class Action Settlement Agreement ("Settlement Agreement" or "Settlement") with People Data Labs, Inc. ("PDL" or "Defendant," with Plaintiff, the "Parties") submitted herewith, (ii) provisionally certify the Settlement Class for the purposes of preliminary approval, designate Plaintiff as the Class Representative, and appoint Bursor & Fisher, P.A. as Class Counsel, (iii) establish procedures for giving notice to members of the Settlement Class, (iv) approve forms of notice to Settlement Class Members, (v) mandate procedures and deadlines for exclusion requests and objections, and (vi) set a date, time, and place for a final approval hearing and a schedule leading up to the final approval hearing (the "Motion").

This motion is made on the grounds that preliminary approval of the proposed class action settlement is proper, given that each requirement of Rule 23(e) has been met. This motion is based on Plaintiff's Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement, the accompanying Declaration of Joseph I. Marchese and attachments thereto, including the Settlement Agreement, the Declaration of Julie Meichsner of Simpluris, Inc., the pleadings and papers on file herein, and any other written and oral arguments that may be presented to the Court.

Dated: May 22, 2026

Respectfully submitted,

By: /s/ Joseph I. Marchese
Joseph I. Marchese

**BURSOR & FISHER, P.A.**
Joseph I. Marchese (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7127
Facsimile: (212) 989-9163
Email: jmarchese@bursor.com

**BURSOR & FISHER, P.A.**
Daniel S. Guerra (State Bar No. 267559)
1990 North California Boulevard, 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: dguerra@bursor.com

**BURSOR & FISHER, P.A.**
Matthew A. Girardi (*pro hac vice*)
50 Main St., Ste. 475
White Plains, NY 10506
Telephone: (914) 874-0708
Facsimile: (914) 206-3656
Email: mgirardi@bursor.com

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

**PAGE**

INTRODUCTION .................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ........................................................2

SUMMARY OF THE PROPOSED SETTLEMENT ........................................................2

I.      CLASS DEFINITION ..............................................................................................2

II.     MONETARY RELIEF .............................................................................................2

III.    PROSPECTIVE RELIEF .........................................................................................2

IV.     RELEASE..................................................................................................................3

V.      SERVICE AWARDS ...............................................................................................3

VI.     ATTORNEYS' FEES AND EXPENSES .................................................................3

VII.    PAYMENT OF NOTICE AND ADMINISTRATIVE FEES...................................4

ARGUMENT ......................................................................................................................4

I.      THE SETTLEMENT CLASS SATISFIES FED R. CIV. P. 23(A) AND 23(B)(3) .............4

        A.      Rule 23(a)(1) – Numerosity..................................................................4

        B.      Rule 23(a)(2) – Commonality ...............................................................5

        C.      Rule 23(a)(3) – Typicality.....................................................................5

        D.      Rule 23(a)(4) – Adequacy .....................................................................5

        E.      Rule 23(b)(3) – Predominance And Superiority ...................................6

II.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE............7

        A.      Fed. R. Civ. P. 23(e)(2)(A) – Plaintiff And Her Counsel Have
                Adequately Represented The Class ........................................................7

        B.      Fed. R. Civ. P. 23(e)(2)(B) – The Proposed Settlement Was
                Negotiated At Arm's Length ..................................................................7

        C.      Fed. R. Civ. P. 23(e)(2)(C) – The Relief Provided Is Adequate ..........8

                1.      The Costs, Risks, And Delay Of Trial And Appeal ....................8

                2.      The Effectiveness Of Any Proposed Method Of Distributing
                        Relief To The Class .....................................................................9

                3.      The Terms Of Any Proposed Award Of Attorney's Fees ...........9

        4.        Any Agreement Required To Be Identified ................................................. 10

    D.    Fed. R. Civ. P. 23(e)(2)(D) – The Proposed Settlement Treats Settlement Class Members Equally ................................................................ 10

III.    THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED .............................. 11

    A.    Information About the Settlement .................................................................. 11

        1.        Guidance 1 and 2: The Proposed Settlement Class and Claims Released .................................................................................................. 11

        2.        Guidance 3: Class Recovery Under the Settlement ................................... 11

        3.        Guidance 4: Other Cases Affected by the Settlement ................................ 12

        4.        Guidance 5, 6, and 7: Allocation Plan, Claims Rate, Reversion .................................................................................................. 12

    B.    Settlement Administration .............................................................................. 13

        1.        Guidance 1 ................................................................................................. 13

    C.    Notice ............................................................................................................. 14

    D.    Attorneys' Fees and Costs; Service Awards ................................................. 14

    E.    Comparable Outcomes .................................................................................. 14

    F.    Additional Considerations in light of the Court's Civil Standing Order ............................................................................................................... 15

IV.    THE COURT SHOULD SET SETTLEMENT DEADLINES AND SCHEDULE A FINAL APPROVAL HEARING ........................................................................................ 18

CONCLUSION ............................................................................................................................ 19

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*,
   2018 WL 8949777 (N.D. Cal. Oct. 5, 2018) ................................................................................... 6

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ....................................................................................................................... 6

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015) .................................................................................................. 3

*Ching v. Siemens Indus., Inc.*,
   2014 WL 2926210 (N.D. Cal. June 27, 2014)................................................................................ 8

*Frasco v. Flo Health, Inc.*,
   349 F.R.D. 557 (N.D. Cal. 2025) .................................................................................................. 6

*G. F. v. Contra Costa County*,
   2015 WL 4606078 (N.D. Cal. July 30, 2015) ............................................................................... 7

*Gargus v. Uplead, LLC*,
   2026 WL 121205 (C.D. Cal. Jan. 13, 2026)................................................................................... 1

*Greer v. Dick's Sporting Goods, Inc.*,
   2020 WL 5535399 (E.D. Cal. Sept. 15, 2020) .............................................................................. 7

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ................................................................................................... 6, 7

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ........................................................................................................... 10

*Hefler v. Wells Fargo & Co.*,
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ............................................................................. 10

*Hilsley v. Ocean Spray Cranberries, Inc.*,
   2020 WL 520616 (S.D. Cal. Jan. 31, 2020) .......................................................................... 7, 8, 9

*In re Anthem, Inc. Data Breach Litig.*,
   2018 WL 3960068 (N.D. Cal. Aug. 17, 2018)............................................................................. 14

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*,
   609 F. Supp. 3d 942 (N.D. Cal. 2022)........................................................................................... 4

*In re MacBook Keyboard Litig.*,
   2023 WL 3688452 (N.D. Cal. May 25, 2023)............................................................................ 3, 9

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*,
746 F. App'x 655 (9th Cir. 2018)..................................................................................... 10

*In re Yahoo! Inc. Customer Data Security Breach Litig.*,
2020 WL 4212811 (N.D. Cal. July 22, 2020) ..................................................................... 5

*Kramer v. XPO Logistics, Inc.*,
2020 WL 1643712 (N.D. Cal. Apr. 2, 2020)....................................................................... 7

*Montera v. Premier Nutrition Corp.*,
2025 WL 751542 (N.D. Cal. Mar. 10, 2025) .................................................................... 12

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004)........................................................................................ 9

*Norton v. LVNV Funding, LLC*,
2021 WL 3129568 (N.D. Cal. July 23, 2021) ..................................................................... 9

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) ............................................................................................................ 7

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) .............................................................................................. 5

*Steiner v. Am. Broad. Co.,*
248 Fed. Appx. 780 (9th Cir. 2007) ................................................................................. 10

*Torres v. Prudential Financial, Inc.*,
2024 WL 4894289 (N.D. Cal. Nov. 26, 2024) .................................................................... 6

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002).......................................................................................... 10

*Vizcaino v. U.S. Dist. Ct. for W.D. Wash.*,
173 F.3d 713 (9th Cir. 1999)............................................................................................ 12

*Wakefield v. ViSalus, Inc.*,
51 F.4th 1109 (9th Cir. 2022)........................................................................................... 12

*Wal–Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ............................................................................................................ 5

*Wolin v. Jaguar Land Rover N. Am., LLC*,
617 F.3d 1168 (9th Cir. 2010)............................................................................................ 6

*Zaklit v. Nationstar Mortg. LLC*,
2017 WL 3174901 (C.D. Cal. July 24, 2017) .................................................................... 6

**STATUTES**

28 U.S.C. § 1715(b) .................................................................................................................... 18

Colo. Rev. Stat. § 6-1-304 ............................................................................................................ 1

Colo. Rev. Stat. § 6-1-305 ................................................................................................... 11, 15

M.C.L. § 445.1711 ...................................................................................................................... 15

M.C.L. § 445.1715(a) .................................................................................................................. 15

**RULES**

Fed. R. Civ. P. 23(a) ................................................................................................................. 4, 6

Fed. R. Civ. P. 23(b) .............................................................................................................. 4, 5, 7

Fed. R. Civ. P. 23(e) ........................................................................................................ 7, 8, 9, 10

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### <u>INTRODUCTION</u>

On September 29, 2025, Plaintiff and her counsel brought a novel case testing Defendant People Data Labs, Inc.'s ("Defendant" or "PDL") liability under Colorado's Prevention of Telemarketing Fraud Act ("PTFA"), Colo. Rev. Stat. § 6-1-304. *See generally* Complaint, ECF No. 1-1. At the time this case was filed, no court had yet analyzed this statute, let alone examined its applicability to an internet-based business-to-business data intelligence platform like Defendant. And although courts have recently denied motions to dismiss in cases involving similar claims, no court has yet decided the constitutional challenges raised in Defendant's Motion to Dismiss. *See Gargus v. Upload, LLC*, 2026 WL 121205 (C.D. Cal. Jan. 13, 2026); *Adinoff v. Relx*, Inc., Case No. 25CV032408 (Denver, Co. City and County Ct. Mar. 23, 2026).

Despite Defendant's challenge to Plaintiff's claims, Plaintiff and her counsel reached a first-of-its-kind settlement that puts significant relief in the hands of Colorado consumers. The Settlement—reached with the assistance of a neutral mediator, Hon. James F. Holderman (Ret.)—creates an over six-million-dollar non-reversionary common fund from which the hundreds of thousands of Settlement Class Members can make a claim for a *pro rata* share. The Settlement obviates the need for expensive, protracted litigation in this novel arena.

Plaintiff contends the current Settlement is a fair, reasonable, and adequate outcome for the Class. Thus, the Settlement falls within the range of possible approval and warrants preliminary approval. Accordingly, Plaintiff respectfully requests that the Court enter an order in the form of the attached Proposed Preliminary Approval Order that (i) grants preliminary approval of the Settlement; (ii) conditionally certifies the Settlement Class; (iii) designates Plaintiff as the Class Representative and appoints Bursor & Fisher, P.A. as Class Counsel; (iv) appoints Simpluris, Inc. ("Simpluris") as the Settlement Administrator and establishes procedures for giving notice to members of the Settlement Class; (v) approves forms of notice to Settlement Class Members; (vi) mandates procedures and deadlines for exclusion requests and objections; and (vii) sets a date, time, and place for a final approval hearing, and further proceedings leading up to that hearing.

<u>FACTUAL AND PROCEDURAL BACKGROUND</u>

The factual and procedural background of this matter are discussed in detail in the Marchese Declaration. *See* Declaration of Joseph I. Marchese ("Marchese Decl.") ¶¶ 4-17.

<u>SUMMARY OF THE PROPOSED SETTLEMENT</u>

**I.    CLASS DEFINITION**

The Settlement Class consists of "all individuals in People Data Labs' database with an (1) inferred mobile number as determined by the information available in Defendant's records, (2) a Colorado area code, (3) an inferred Colorado location (current or historical), (4) whose data was sourced on or after September 2022, and (5) whose information was disclosed at least once from September 2022 to March 3, 2026." Settlement ¶ 1.29. The Settlement Class definition differs from the complaint in order to add persons whose cell phone numbers were disclosed by PDL through means other than peopledatalabs.com, to tailor Colorado residency, and to define the statutory period. Based on an analysis of Defendant's records, there are 908,881 Settlement Class Members. Settlement ¶ 1.31.

**II.    MONETARY RELIEF**

Defendant has agreed to establish a non-reversionary common fund of $6,362,167.00 to cover all claims filed by Settlement Class Members, as well as the costs of settlement administration, services awards, and attorneys' fees, costs, and expenses that the Court may approve. Settlement ¶¶ 1.32, 2.1. Settlement Class Members can receive a *pro rata* cash payment which will be determined by the number of claims filed. *Id.* No money will revert to Defendant. *Id*. "To the extent that any checks issued to a Settlement Class Member are not cashed within one hundred twenty (120) days after the date of issuance, such uncashed check funds shall be redistributed on a pro rata basis…" *Id.* ¶ 2.1(d). "To the extent each Settlement Class Member would receive less than $5.00 in any such secondary distribution or if a secondary distribution would be otherwise infeasible, any uncashed check funds shall, subject to Court approval, be paid to the Consortium of Cybersecurity Clinics, a not-for-profit organization…" *Id.*

**III.    PROSPECTIVE RELIEF**

The Settlement also provides prospective relief. Within 60 days of the Court's entry of final

approval, unless applicable law permits the conduct alleged in the Complaint, PDL will not disclose the cellular telephone number of any Settlement Class Member through its web-based offerings unless it can establish, based on its records or reliable third-party data, that the individual is no longer a Colorado resident or that the individual has provided affirmative consent to such disclosure.

## IV.    RELEASE

In exchange for the relief described above, Settlement Class Members who do not opt out will release claims against Defendant and each of the "Released Parties," as defined in Settlement ¶ 1.24, arising from the same factual predicate alleged in the Action, including claims arising from or relating to the Released Parties' alleged collection, listing, disclosure, or publication of Colorado residents' cell phone numbers. *See* Settlement ¶¶ 1.23, 3. The release does not extend to claims held by any governmental agency or governmental actor. *See id.*

## V.    SERVICE AWARDS

Subject to the Court's approval, Class Counsel intends to seek payment of a service award to Plaintiff in the amount of $5,000, to be paid from the Settlement Fund. Settlement ¶ 8.3. This is a "presumptively reasonable" service award. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015). Plaintiff has spent substantial time on this action, assisted with the drafting of the Complaint and investigation of her claims, has been in contact with counsel frequently, and has stayed informed of the status of the action, including settlement, and was willing to sit for a deposition and testify at trial if necessary. *See* Marchese Decl. ¶¶ 40-41. Settlement Class Members will be notified of Plaintiff's intent to seek a service award and the amount sought in the Long Form Notice. *See* Settlement Ex. B.

## VI.    ATTORNEYS' FEES AND EXPENSES

While under the terms of the Settlement Proposed Class Counsel may apply up to a third of the Settlement Fund for attorneys' fees, costs, and expenses, in conformity with the customary benchmark, Proposed Class Counsel intends to apply to the Court for an award of attorneys' fees of no more than 25% of the Settlement Fund. Marchese Decl. ¶ 28; Settlement ¶ 8.1. A 25% fee award "is within the usual range of 20-30% in common fund cases." *In re MacBook Keyboard Litig.*, 2023

WL 3688452, at *14 (N.D. Cal. May 25, 2023). In addition, Proposed Class Counsel will also apply for $25,230.01 in already incurred reasonable litigation costs and expenses that were necessary for the prosecution of this Action, as well as any future costs related to seeking Final Approval and administering the Settlement. Marchese Decl. ¶¶ 30-31.

## VII.    PAYMENT OF NOTICE AND ADMINISTRATIVE FEES

The Parties propose that Simpluris act as the Settlement Administrator. Settlement ¶ 1.28. Simpluris was selected after a competitive bidding process in which two well-regarded settlement administrators submitted competing proposals: JND Legal Administration and Simpluris, Inc. Marchese Decl. ¶ 43. Both administrators' proposed plans included the same plan for direct notice to the Settlement Class contemplated in the Settlement. *Id*. The Parties, together, concluded that Simpluris's plan provided the best opportunity to reach the greatest number of Class Members and allow for the highest potential claims rate for this case at a competitive cost. *Id*. ¶ 44. Simpluris expects this notice to reach over 90% of the Settlement Class. Declaration of Julie Meichsner ("Meichsner Decl.") ¶ 36. The Notice Plan includes direct notice and PDL will supply Settlement Class Members' contact information. The Settlement Administrator's expenses will be paid from the Settlement Fund. Settlement ¶¶ 1.27, 1.32, 2.21(b).

The Meichsner Declaration and the Settlement Agreement describe the notice plan in full, as well as Simpluris's credentials, procedures for securely handling class member data, and Simpluris's acceptance of responsibility and maintenance of insurance in case of errors. *See* Meichsner Decl. ¶¶ 4-43.

## ARGUMENT

## I.    THE SETTLEMENT CLASS SATISFIES FED R. CIV. P. 23(A) AND 23(B)(3)

### A.    Rule 23(a)(1) – Numerosity

In the Ninth Circuit, "numerosity is satisfied if the class includes forty or more members." *See In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 959 (N.D. Cal. 2022) (cleaned up). Here, there are estimated to be 908,881 Settlement Class Members. Marchese Decl. ¶ 10.

### B.     Rule 23(a)(2) – Commonality

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (cleaned up). "This requirement has been construed permissively, and all questions of fact and law need not be common to satisfy the rule." *In re Yahoo! Inc. Customer Data Security Breach Litig.*, 2020 WL 4212811, at *2 (N.D. Cal. July 22, 2020) ("*In re Yahoo*") (cleaned up). Here, multiple common questions of fact and law exist, including but not limited to whether PDL "listed" Class Members' cell phone numbers in a "directory" in violation of the PTFA; whether PDL's directory is "commercial" under the PTFA; whether the PTFA is constitutional as applied to PDL; and whether Class Members are entitled to statutory damages under the PTFA.

### C.     Rule 23(a)(3) – Typicality

Rule 23 (a)(3) requires that the claims of the representative plaintiff be "typical of the claims … of the class." *See* Fed. R. Civ. P. 23(a)(3). Here, the claim of the named Plaintiff is typical of the claims of the Settlement Class because the named Plaintiff, like all other members of the Class, allegedly had her cell phone number listed and shared by Defendant in a directory without her consent.

### D.     Rule 23(a)(4) – Adequacy

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether the representation meets this standard, we ask two questions: (1) do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003).

As to the first inquiry, Plaintiff and Proposed Class Counsel have no conflicts of interest with the Class. *See* Marchese Decl. ¶¶ 38, 42. Rather, the named Plaintiff, like each absent Class Member, has a strong interest in proving Defendant's alleged common course of conduct and obtaining redress. *Id*. ¶ 42. As to the second inquiry, Plaintiff and her counsel vigorously prosecuted this action and will continue to do so through final approval. *Id*. ¶¶ 4-17, 39-42. Plaintiff and counsel brought a

novel theory of liability, conducted discovery in advance of the mediation, and attended a mediation with Hon. James F. Holderman (Ret.). *Id.* ¶¶ 4-17. In addition, Proposed Class Counsel conducted significant research regarding PDL's listing service and Plaintiff's allegations concerning how it monetizes such disclosures. *Id.* ¶¶ 12, 26. Proposed Class Counsel also has extensive experience litigating privacy cases, including under the PTFA. *Id.* ¶¶ 35-36; *see also id.* Ex. 3 (firm resume of Bursor & Fisher, P.A.). And Plaintiff has remained engaged in the litigation, including communication with her counsel, and reviewing settlement documents. Marchese Decl. ¶¶ 39-42.

### E.    Rule 23(b)(3) – Predominance And Superiority

Fed. R. Civ. P. 23(b)(3) requires plaintiffs to prove "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Predominance exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). Courts in similar privacy cases have found that predominance is readily met. *See Torres v. Prudential Financial, Inc.*, 2024 WL 4894289, at *4-9 (N.D. Cal. Nov. 26, 2024) (certifying class under CIPA § 631); *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 587 (N.D. Cal. 2025) (same as to CIPA § 632). Whether PDL's alleged listing of Settlement Class Members' cell phone numbers violated the PTFA and whether Class Members are entitled to statutory damages, present common questions capable of class wide resolution. *See, e.g.*, *Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*, 2018 WL 8949777, at *5 (N.D. Cal. Oct. 5, 2018).

Turning to superiority, "[t]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Courts have found that, like this one, where the class seeks statutory damages, superiority is met. *See Zaklit v. Nationstar Mortg. LLC*, 2017 WL 3174901, at *10 (C.D. Cal. July 24, 2017) ("[T]he Court is not persuaded that $5,000 in damages is

so clearly sufficient to motivate individual litigation involving complex factual and legal issues as to weigh against class certification.") (cleaned up). A class action is the only reasonable method to fairly and efficiently adjudicate Class Members' claims against PDL because individual actions would be impracticable given the small individual recoveries and litigation costs. *See, e.g.*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("Class actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . [In such a case,] most of the plaintiffs would have no realistic day in court if a class action were not available.").

## II.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

Fed. R. 23(e)(2) provides that "the court may approve [a proposed class action settlement] only after a hearing and on finding that it is fair, reasonable, and adequate." To make this determination, the Court evaluates the factors set forth in that rule. *Id*. Each factor is met here.[1]

### A.    Fed. R. Civ. P. 23(e)(2)(A) – Plaintiff And Her Counsel Have Adequately Represented The Class

This factor is met for the same reasons as Plaintiff and Proposed Class Counsel meet the adequacy prong under Fed. R. Civ. P. 23(a)(4). *See* § I.D, *supra*; *see also Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616, at *5 (S.D. Cal. Jan. 31, 2020) ("Because the Court found that adequacy under Rule 23(a)(4) has been satisfied above, due to the similarity, the adequacy factor under Rule 23(e)(2)(A) is also met.").

### B.    Fed. R. Civ. P. 23(e)(2)(B) – The Proposed Settlement Was Negotiated At Arm's Length

Both Proposed Class Counsel and counsel for Defendant are experienced in class action litigation, and were "thoroughly familiar with the applicable facts, legal theories, and defenses on both sides." *Hilsley*, 2020 WL 520616, at *5; *see also* Marchese Decl. ¶¶ 10-12; 32-37. Further, "the Settlement was reached as a result of informed and non-collusive arms-length negotiations facilitated by a neutral mediator," the Hon. James F. Holderman (Ret.). *Kramer v. XPO Logistics, Inc.*, 2020 WL 1643712, at *1 (N.D. Cal. Apr. 2, 2020); *G. F. v. Contra Costa County*, 2015 WL 4606078, at

---

[1] Courts in this Circuit also evaluate the reasonableness of settlements under the factors set forth in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (1998). These factors "substantively track those provided in [current version of] Rule 23(e)(2)." *Greer v. Dick's Sporting Goods, Inc.,* 2020 WL 5535399, at *2 (E.D. Cal. Sept. 15, 2020). Thus, satisfaction of Fed. R. Civ. P. 23(e)(2) is commensurate with satisfaction of the *Hanlon* factors.

*13 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (cleaned up); *see also* Marchese Decl. ¶¶ 10, 13.

### C.      Fed. R. Civ. P. 23(e)(2)(C) – The Relief Provided Is Adequate

Fed. R. Civ. P. 23(e)(2)(C) requires that the Court consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." "The amount offered in the proposed settlement agreement is generally considered to be the most important consideration of any class settlement." *Hilsley*, 2020 WL 520616, at *6.

Here, the relief provided for compares favorably to Plaintiff's potential actual damages and is the first class settlement under the PTFA. *See* Summary Of The Settlement § II, *supra*. Further, all other factors weigh in favor of preliminary approval.

####       1.      The Costs, Risks, And Delay Of Trial And Appeal

While Plaintiff contends her PTFA claim maps cleanly onto the plain text of the statute, her theory of liability is certainly novel. Marchese Decl. ¶ 23. At this time, no court has decided whether the statute is facially constitutional, whether class wide damages are available, and whether a class can be certified. *Id*. Plaintiff may have even certified a class, and she is confident she would. *Id*. But if discovery showed that PDL's alleged listings did not map as cleanly onto the statute as Plaintiff alleges, then she could lose at summary judgment after years of costly and contentious litigation. *Id*.

All of these risks are compounded by the defenses Defendant—represented by sophisticated and experienced counsel—would raise in this matter and that the Court could revisit the applicability of the statute to the instant claims considering other authorities. *Id*. ¶ 24. These are in addition to the normal risks of class action litigation, such as that Defendant could appeal any victory at trial and could petition for immediate appellate review of any class certification order. *Id*.

As such, "settlement is favored where, as here, significant procedural hurdles remain." *Ching v. Siemens Indus., Inc.*, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014); *see id.* ("Avoiding such unnecessary and unwarranted expenditure of resources and time would benefit all parties, as well as

the Court."); *see also Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (when considering the "vagaries of litigation," the "significance of immediate recovery by way of the [proposed] compromise" is much preferable "to the mere possibility of relief in the future, after protracted and expensive litigation").

2.    *The Effectiveness Of Any Proposed Method Of Distributing Relief To The Class*

"A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." 2018 Advisory Note to Fed. R. Civ. P. 23(e)(2)(C)-(D). Here, PDL must provide the Settlement Administrator with an electronic list from its records that includes the names, postal addresses, and e-mail addresses belonging to individuals who are members of the Settlement Class. Settlement Agreement ¶ 4.1. All affected Class Members will thus be directly contacted. All Class Members are verifiable because their cell phone number must match PDL's database. Class Members must submit a Claim Form in order to receive any cash benefit. The Claim Form is a simple two-page form that asks each potential Class Member to enter their contact and payment information. *See Norton v. LVNV Funding, LLC*, 2021 WL 3129568, at *11 (N.D. Cal. July 23, 2021); *see also* Settlement Ex. A. Such a proposed method of distribution is reasonable and "not burdensome." *Norton*, 2021 WL 3129568, at *11.

3.    *The Terms Of Any Proposed Award Of Attorney's Fees*

Proposed Class Counsel intends to apply to the Court for an award of attorneys' fees of no more than 25% (or $1,590,542) of the Settlement Fund. Marchese Decl. ¶ 28. The Court need not "determine attorney's fees at the preliminary approval stage" and Proposed Class Counsel will "fully address the reasonableness of their requested fee award in their forthcoming Motion for Attorneys' Fees, Costs, and [Service Award]." *Hilsley*, 2020 WL 520616, at *7. However, the proposed fee request of 25% of the Settlement Fund "is within the usual range of 20-30% in common fund cases." *In re MacBook Keyboard Litig.*, 2023 WL 3688452, at *14.

The reasonableness of this award is confirmed by a lodestar crosscheck. As of May 22, 2026, Proposed Class Counsel has billed a total of 310.20 hours to this matter for a lodestar of $295,077.50. Marchese Decl. ¶ 29. The intended requested fee award thus represents a multiplier of 5.39 based on

Proposed Class Counsel's current lodestar, which is reasonable. *See*, *e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002); *Steiner v. Am. Broad. Co.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (affirming award with multiplier of 6.85). This is especially so given Proposed Class Counsel will spend additional time on this matter assisting with the administration of notice and preparing for and moving for final approval, thus reducing the lodestar multiplier. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 746 F. App'x 655, 659 (9th Cir. 2018) ("The district court did not err in including projected time in its lodestar cross-check; the court reasonably concluded that class counsel would, among other things … assist in implementing the settlement").

In addition, Proposed Class Counsel will also apply for at least $25,230.01 in reasonable litigation costs and expenses that were necessary for the prosecution of this Action. Marchese Decl. ¶¶ 30-31; *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (plaintiff may recover as part of the award of attorney's fees those out-of-pocket expenses that "would normally be charged to a fee paying client.") (cleaned up). These costs include filing/court fees, research fees, service fees, and mediation fees, and may include additional costs related to seeking approval and administration of the Settlement. *See* Marchese Decl. ¶ 30; *see also id.* Ex. 2. Should Proposed Class Counsel incur additional expenses related to securing Final Approval or administering the Settlement, Proposed Class Counsel will apply for reimbursement of those expenses as well. *Id.* ¶ 31.

### 4. Any Agreement Required To Be Identified

Other than the Settlement Agreement and its Exhibits, no such agreement exists.

**D.     Fed. R. Civ. P. 23(e)(2)(D) – The Proposed Settlement Treats Settlement Class Members Equally**

Each Settlement Class Member who submits an Approved Claim by the Claims Deadline will receive the same *pro rata* portion of the Settlement Fund. Settlement ¶ 2.1(b). Thus, the Settlement does not "improperly grant preferential treatment to class representatives or segments of the class." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *8 (N.D. Cal. Dec. 18, 2018).

## III.    THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED

The key terms of the Settlement are summarized below, in accordance with the applicable Northern District of California's Procedural Guidance for Class Action Settlements ("Guidance") and the Court's Civil Standing Order.

### A.    Information About the Settlement

#### 1.    Guidance 1 and 2: The Proposed Settlement Class and Claims Released

The Settlement Class is practically the same in the Complaint and is tailored to adequately identify affected Class Members. The Complaint seeks to represent "a class defined as all Colorado residents whose cell phone numbers were listed on peopledatalabs.com." Compl. ¶ 31 (ECF No. 1-1). The Settlement Class is defined as "all individuals in People Data Labs' database with an (1) inferred mobile number as determined by the information available in Defendant's records, (2) a Colorado area code, (3) an inferred Colorado location (current or historical), (4) whose data was sourced on or after September 2022, and (5) whose information was disclosed at least once from September 2022 to March 3, 2026." Settlement Agreement ¶ 1.29. This definition adds persons whose cell phone numbers were disclosed by Defendant through disclosures other than peopledatalabs.com, uses PDL's records regarding numbers with a Colorado area code as an objective means for determining Colorado residency, and limits the class to applicable statutes of limitations.

As described in Summary of the Proposed Settlement § IV., *supra*, the release only covers claims stemming from the disclosure of cell phone numbers and is thus consistent with Plaintiff's and Settlement Class Members' rights to privacy.

#### 2.    Guidance 3: Class Recovery Under the Settlement

The non-reversionary Settlement Fund of $6,362,167.00 is substantial by any measure, and certainly falls within range of possible approval. Plaintiff's case asserts a claim under the PTFA, which provides statutory damages of "at least three hundred dollars ($300) and not more than five hundred dollars ($500) for a first offense and at least five hundred dollars ($500) and not more than one thousand dollars ($1,000) for a second or subsequent offense." C.R.S. § 6-1-305(1)(c). Given the estimated class size of 908,881, in the event that Plaintiff prevailed at trial, consistent with the

statutory damages above, the maximum damages would range between $272,664,300 and $908,881,000. Such an award may have been found to be excessive under Ninth Circuit precedent. *See Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1125 (9th Cir. 2022) (vacating award of $925 million in statutory damages); *Montera v. Premier Nutrition Corp.*, 2025 WL 751542, at *7 (N.D. Cal. Mar. 10, 2025) (awarding reduced statutory damages after finding full amount of $83 million in statutory damages was "grossly punitive and thus wholly disproportionate to the legislative goals").

Plaintiff also faced substantial risk in losing a contested motion to dismiss, let alone continued litigation which could result in no recovery, limited recovery, or even if successful, years of delay due to uncertainty at class certification, dispositive motions, trial, and appeal. *See Vizcaino v. U.S. Dist. Ct. for W.D. Wash.*, 173 F.3d 713, 721 (9th Cir. 1999). In contrast, the Settlement provides the Settlement Class Members with the substantial benefit of guaranteed non-reversionary fund and an opportunity for Settlement Class Members who submit valid claims to receive cash payments in the near term.

### 3. Guidance 4: Other Cases Affected by the Settlement

Class Counsel are not aware of any additional cases that will be affected by the Settlement.

### 4. Guidance 5, 6, and 7: Allocation Plan, Claims Rate, Reversion

As discussed above in § III.A.2 the Settlement creates a $6,362,167.00 non-reversionary Settlement Fund from which Class Members who submit valid claims may receive a pro rata portion as a cash payment after deductions for any Settlement Administration Expenses, any Fee and Expense Award, and any Service Award.

The Settlement's Notice Plan is robust and designed to drive a higher claims rate. PDL will provide the Administrator with contact information to enable direct Notice through email or mail to most Settlement Class Members. Settlement at § 4.1(a); *see also* Meichsner Decl. ¶¶ 30-33. Counsel notes that this settlement is the first of its kind, making prediction of an expected claims rate more difficult. However, in light of Proposed Class Cousnel's experience in Right of Publicity settlements against several of Defendant's competitors using similar notice procedures, counsel estimates a claims rate between 10 and 20 percent. *See* Marchese Decl. ¶ 45; *see also Krause v. RocketReach,*

*LLC*, Case No. 1:21-cv-01938 (N.D. Ill.) (12% claims rate); *Butler v. Whitepages, Inc.*, Case No. 19-cv-04871 (N.D. Ill.) (25% and 17% claims rate for two classes); *Gaul v. Checkpeople, LLC*, Case No. 21-cv-01313 (N.D. Ill.) (11% claims rate); *Fischer et al v. Instant Checkmate LLC*, Case No. 1:19-cv-04892 (N.D. Ill.) (15.44% claims rate across multiple classes).[2] These cases are good examples for estimates because they involve claims against other websites with tools that consumer can use to look up individual contact information. Just like in this case, those cases involved direct notice to affected class members and because the defendants' services offered online publication of or access to personal contact information, as Plaintiff alleges was the case here.

### B.    Settlement Administration

#### 1.    Guidance 1

As discussed above in § VI of the Summary of the Proposed Settlement, the Parties request that Court authorize the retention of Simpluris, Inc. as Settlement Administrator, which Plaintiff engaged after a competitive bidding process seeking quotes from multiple settlement administrators. Marchese Decl. ¶¶ 43-44. Plaintiff selected Simpluris, which worked on reducing costs to maximize Class recovery, and produced a detailed plan to maximize valid claims. Given that PDL has a list of Settlement Class Members and their contact information, direct notice was the sole method of notice that was contemplated. *Id.* ¶ 46. Class Counsel has engaged Simpluris on eight settlements in the past two years. *Id.* ¶ 47.

Simpluris's data security practices are detailed in its accompanying Declaration. Meichsner Decl. ¶¶ 4-18. Simpluris will accept responsibility for its data practices and maintains insurance. *See id.*, *see also id.* ¶ 19. The Settlement Administration Expenses will be paid from the Settlement fund. Settlement ¶¶ 1.27, 1.32, 2.21(b). Simpluris anticipates notice and administration expenses in the amount of $175,599.00. *Id.* ¶ 28. This amount is reasonable given that Simpluris's settlement administration fees, in five recent class settlements, ranged between $4.69 and $7.84 per claim. *Id.* ¶ 27. This amount is also approximately 2.8% of the Settlement fund, which is a reasonable percentage

---

[2] The *Instant Checkmate* settlement initially had a 2.59% aggregate claims rate. This number was increased to 15% through a supplemental postcard notice program. *See Fischer et al v. Instant Checkmate LLC*, Case No. 1:19-cv-04892, Dkt. 283 at 17 (N.D. Ill.).

and is typical in class settlements of this size. *See In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *8 (N.D. Cal. Aug. 17, 2018) (approving administration costs of 20% of fund).

### C.    Notice

The Meichsner Declaration, the Settlement Agreement, and the attachments thereto, detail the Notice Plan. *See* Meichsner Decl. ¶¶ 30-37; Settlement § 4, Ex. A-C. The Notice plan complies with the Guidance and provides counsel's contact information, settlement website, PACER instructions, placeholder for the final approval hearing, and notice regarding potential changes to dates. *Id.* PDL will provide the Administrator with contact information to enable direct Notice through email or mail to most Settlement Class Members. Settlement at § 4.1(a).

### D.    Attorneys' Fees and Costs; Service Awards

As discussed above in § II.3.C, Proposed Class Counsel intends to apply to the Court for an award of attorneys' fees of no more than 25% (or $1,590,542) of the Settlement Fund. Settlement ¶ 8.1. Proposed Class Counsel will also apply for at least $$25,230.01 in reasonable litigation costs and expenses that were necessary for the prosecution of this Action. Marchese Decl. ¶¶ 30-31. These amounts are reasonable in light of usual range awarded in such cases and the lodestar cross check. Service Awards are discussed in § IV of the Summary of the Proposed Settlement above.

### E.    Comparable Outcomes

The relief obtained on behalf of the Settlement Class Members is strong in light of the fact that no motion to dismiss was decided in this case and no case has ruled on the constitutional challenges raised by Defendant. With an estimated valid claims rate between 10 and 20 percent, counsel estimates that each Approved Claim will receive a benefit between approximately $25 and $50.

Irrespective of claims rates, the Settlement recovered $7 per class member. Given that this is the first class settlement under the PTFA, the best comparison is to comparable settlements of other single-state privacy class actions dealing with the unlawful use of personal information, reached at similarly early procedural postures and prior to the development of robust caselaw on the statute. A particularly apt comparison can be made with early settlements of cases challenging magazine

---

publishers' unconsented disclosure of subscriber lists under Michigan's Preservation of Personal Privacy Act ("PPPA"), M.C.L. § 445.1711, *et seq.*:

| Case | Posture at Settlement | Fund Size(s) | Settlement Class Size | Approximate Per-Classmember Recovery |
|---|---|---|---|---|
| *Taylor et al v. Trusted Media Brands, Inc.*, No. 7:16-cv-01812, Dkt. 87 (S.D.N.Y. Feb. 1, 2018) | Motion to dismiss pending | $8.225 million | 1,101,651 | $7.47 |
| *Kinder v. Meredith Corp.*, No. 13-cv-11284, dkt. 81 (E.D. Mich. May 18, 2016) | Motion to dismiss denied in part | $7.5 million | ~980,000 | $7.65 |
| *Coulter-Owens v. Rodale*, No. 14-cv-12688, dkt. 54 (E.D. Mich. Sept. 29, 2016) | Motion to dismiss denied in part | $4.5 million | ~580,000 | $7.75 |
| *Moeller v. Am. Media, Inc.*, No. 5:16-cv-11367, dkt. 42 (E.D. Mich. Jun. 8, 2017) | Motion to dismiss denied | $7.6 million | ~415,000 | $18.31 |
| *Halaburda v. Bauer Publ'g Co.*, No. 12-cv-12831, dkt. 68 (E.D. Mich. Jan. 6, 2015) | Motion to dismiss denied in part | $775,000 | ~40,000 | $19.38 |

This settlement compares very favorably to these early PPPA settlements. Violations of the PTFA carry statutory damages of "at least three hundred dollars and not more than five hundred dollars for a first offense and at least five hundred dollars and not more than one thousand dollars for a second or subsequent offense." *See* C.R.S. § 6-1-305. In contrast, the PPPA carries ***minimum*** statutory damages of $5,000.00, pursuant to M.C.L. § 445.1715(a). The fact that this settlement obtained relief comparable to privacy settlements of analogous class sizes, where the plaintiffs alleged violations carrying ***greater*** statutory damages, at ***later*** procedural postures, evidence the excellent relief obtained for the Settlement Class here.

      **F.**     **Additional Considerations in light of the Court's Civil Standing Order**

In addition to the procedure described above, the Settlement and Notice Plan complies with the Court's Civil Standing Order rules of class settlements.

1.  The Notice provides that any objection requirements may be excused upon a showing of good cause. *See* Settlement Agreement, Exs. A-C. The Notice also provides the link to the Court's Zoom courtroom. *Id.*

2. The Settlement Administration has submitted a declaration in support of this motion describing:

(a) That it will not be receiving any money value in connection with administering this settlement, except for notice and administration expenses to be paid from the Settlement Fund described in §§ III.B.1. Meichsner Decl. ¶ 25. Simpluris estimates that amount to be $175.599.00. *Id.* ¶ 28.

(b) That Settlement Class Members would not be charged by the Settlement Administrator. *Id.* ¶ 26.

(c) That it "does not sell, rent, or otherwise disclose settlement class member information or visitor data gathered from the settlement site to third parties for commercial or marketing purposes." *Id.* ¶ 20.[3]

(d) That artificial intelligence is not used to make determinations regarding settlement eligibility and, to the extent that artificial intelligence is used in any supportive role, it is subject to human review. *Id.* ¶ 22. The Settlement Administrator will use "appropriate safeguards consistent with industry standards" for any use of artificial intelligence. *Id.*

(e) That it has a robust fraud prevention plan. *Id.* ¶¶ 23-24.

(f) Simpluris has never resigned from or been terminated from its settlement administration duties prior to completion of a court-appointed administration. *Id.* ¶ 15.

(g) The total dollar spent on administration per valid claim submitted. *Id.* ¶ 27.

3. The Marchese Declaration describes (a) the due diligence counsel performed regarding the Settlement Administrator, (b) that there is no conflict of interest between counsel and the Settlement Administrator because they have no financial relationship and counsel has not received any gifts over $500 from the Settlement Administrator, (c) class counsel's

_____

[3] Simpluris's website does "utilize third-party tracking and analytics tools (such as pixels or similar technologies) solely for the purposes of validating submissions, ensuring website functionality, maintaining the integrity and security of the claims process, and for reporting and analysis related to performance of the administration services." *Id.* ¶ 21.

assessment that the Escrow Account will be at an interest-bearing account at a depository institution insured by the Federal Deposit Insurance Corporation and thus will be held in risk-free instruments, and (d) that the proposed administration arrangements serve the best interests of the settlement class. Marchese Decl. ¶¶ 48-50.

4. Notice and Claims Procedure:

   a. There is no significant portion of the Settlement Class that does not speak English and therefore the class notice need not be in other languages. *See* Meichsner Decl. ¶ 34.

   b. PDL will provide the Settlement administrator with a list of Settlement Class Members and their contact information. Settlement ¶ 4.1(a). Notice will be by email. *Id.* § 4.1(b). If any emails are bounced-back, the Settlement Administrator will correct any issues and make a second email attempt. *Id.* If the second email attempt is unsuccessful, the Settlement Administrator will provide notice by postal mail if a postal address is available. *Id.* The Settlement Administrator will provide mail notices to any Settlement Class Members that have no attributable email address. *Id.* This Notice Plan is most reasonable in this case because PDL has a list of the Settlement Class Members and their contact information. Thus, direct notice to the affected Settlement Class Members is more efficient and superior to publication or social media notice.

   Claims may be made online on the settlement website or through submission of a paper claim form. *See* Ex. B. to Settlement. This is appropriate because it allows Settlement Class Members to use their preferred methodology of claim submission.

   c. The Settlement Fund will be distributed on a *pro rata* basis. Settlement ¶ 2.1(b). Any checks not deposited within 120 days of issuance will expire. *Id.* ¶ 2.1(d). Such uncashed funds will be redistributed to all Settlement Class Members who cashed checks during the initial distribution, to the extent such secondary checks

will be more than $5.00. *Id.* This is to ensure maximum benefit to Settlement Class Members who make timely and valid claims. Given that any amount under $5.00 is a *de minimis* benefit and could ultimately be more costly to redistribute, the Parties elected to provide such funds to a *cy pres* organization, the Consortium of Cybersecurity Clinics, a not-for-profit organization, or such other not-for-profit organization(s) recommended by counsel for the Parties and approved by the Court. *Id.*

d.  The Settlement requires class members to file claims to receive a cash benefit. Settlement ¶ 2.1 (b). This is appropriate to ensure the accuracy of the contact information listed by PDL, given that a cell phone number (as opposed to a landline) and Colorado residency is required to make a claim under the PTFA. This also avoids sending checks into the abyss resulting in a large number of unclaimed checks that would waste the Settlement Administrator's time and the Settlement Fund's money.

## IV.  THE COURT SHOULD SET SETTLEMENT DEADLINES AND SCHEDULE A FINAL APPROVAL HEARING

In connection with preliminary approval, the Court must set a Final Approval Hearing date, dates for Notice, and deadlines for objecting to the Settlement and filing papers in support of the Settlement. Plaintiff proposes the following schedule:

| Event | Proposed Deadline |
| --- | --- |
| CAFA Notice Pursuant to 28 U.S.C. § 1715(b) | June 1, 2026 |
| Establishment of Settlement Website | July 31, 2026 |
| Notice Date | July 31, 2026 |
| Motion for Attorneys' Fees, Costs, Expenses, and Service Award | August 25, 2026 |
| Objection and Opt-Out Deadline | September 29, 2026 |
| Claims Deadline | September 29, 2026 |
| Final Approval Motion and Response to Any Objections | October 29, 2026 |
| Supplement declaration (1) stating the number of claims, requests for exclusion, and objections to date and (2) attesting that Notice was disseminated consistent with the Settlement | October 29, 2026 |
| Final Approval Hearing | November 10, 2026 at 10:00 a.m. |
| Award Issuance Date | Begins 10 days after entry of Final Judgment |

## CONCLUSION

For the foregoing reasons, Plaintiff and Proposed Class Counsel respectfully request that the Court grant preliminary approval to the Settlement, provisionally certify the Settlement Class for settlement purposes only, appoint Plaintiff as the Class Representative and Bursor & Fisher as Class Counsel, approve the proposed Notice plan, and enter the Proposed Preliminary Approval Order in the form submitted herewith.

Dated: May 22, 2026                          Respectfully submitted,

                                             By:   */s/ Joseph I. Marchese*
                                                      Joseph I. Marchese

                                             **BURSOR & FISHER, P.A.**
                                             Joseph I. Marchese (*Pro Hac Vice*)
                                             1330 Avenue of the Americas, 32nd Floor
                                             New York, NY 10019
                                             Telephone: (646) 837-7127
                                             Facsimile: (212) 989-9163
                                             Email: jmarchese@bursor.com

                                             **BURSOR & FISHER, P.A.**
                                             Daniel S. Guerra (State Bar No. 267559)
                                             1990 North California Boulevard, 9th Floor
                                             Walnut Creek, CA 94596
                                             Telephone: (925) 300-4455
                                             Facsimile: (925) 407-2700
                                             Email: dguerra@bursor.com

                                             **BURSOR & FISHER, P.A.**
                                             Matthew A. Girardi (*pro hac vice*)
                                             50 Main St., Ste. 475
                                             White Plains, NY 10506
                                             Telephone: (914) 874-0708
                                             Facsimile: (914) 206-3656
                                             Email: mgirardi@bursor.com

                                             *Attorneys for Plaintiff*